**Carroll WALLACE, Plaintiff,**

v.

**RYAN–WALSH STEVEDORING CO., INC., Defendant.**

**No. B–88–678–CA.**

United States District Court, E.D. Texas, Beaumont Division.

March 9, 1989.

Mike Jacobellis, Tonahill, Hile, Leister & Jacobellis, Beaumont, Tex., for plaintiff.

Gray H. Miller, Fulbright & Jaworski, Houston, Tex., for defendant.

## MEMORANDUM OPINION

SCHELL, District Judge.

The plaintiff moves to remand the above captioned and numbered cause to state court. For the reasons set forth below, the motion is hereby GRANTED and the case is REMANDED to the 60th Judicial District Court of Jefferson County, Texas.

## I. BACKGROUND

The motion at bar involves a jurisdictional challenge in the context of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA). The plaintiff, Carroll Wallace, was employed as a gearman[1] by Ryan–Walsh Stevedoring Co., Inc.

---

1. As a gearman, Wallace did not perform traditional stevedoring work of loading and unloading vessels. Rather, he maintained gear used in loading and unloading and transported gear to and from the dock.

(Ryan–Walsh) at the Port of Beaumont in Beaumont, Texas, at the time of his injury. Wallace is a member of the local longshoremen's union, the International Longshoremen's Association (ILA). He suffered an initial lower back injury in December, 1985, in an auto-truck collision during the course of his duties, which resulted in a ruptured disc. At that time, he filed a claim for compensation benefits under the Texas Workmen's Compensation Act (TWCA) and the LHWCA concurrently and received benefits.[2]

After his initial injury, Wallace apparently worked off and on until the severity of his injury forced him to cease in March, 1987. In April, 1987, he underwent a laminectomy and a foraminectomy and did not work again until October, 1987, following his physician's release. On October 23, 1987, after only three weeks back at work, Wallace re-injured his back. The Court's file contains Wallace's handwritten statement, in which he claims that he had been washing down loading trays used in the stevedoring process and that handling the hose began to bother him. He then drove his superintendent's truck to a nearby gas station for refueling and slipped, but did not fall, on an oil spot on the pavement, which caused him to experience back pain. Upon returning to the dock, he resumed washing down loading trays and felt a "catch" in his back, resulting in an inability to fully straighten his posture. Wallace then underwent further medical care and was released to return to work by his physician on May 4, 1988, with a fifty pound lifting restriction.

From October 24, 1987, until May 8, 1988, Wallace received LHWCA benefits at the rate of $616.96 per week. In November, 1987, Wallace notified Ryan–Walsh that he would file a claim for benefits under the TWCA. Plaintiff's counsel also communicated the filing of the state law claim to Ryan–Walsh in April, 1988.

Wallace presented himself for re-employment on May 8, 1988. Ryan–Walsh immediately refused to rehire him on the basis that he was unfit to return to his duties under the provisions of the collective bargaining agreement between Ryan–Walsh and the ILA. Defendant's position induced Wallace to file his Original Petition in state court on June 16, 1988. Wallace's state court Petition is grounded solely under article 8307c of the TWCA[3] and raises no issue of federal law. Article 8307c proscribes discrimination against employees who file claims for benefits under the TWCA, commonly known as retaliatory discharge.

Wallace also instigated grievance procedures through the ILA. In its original hearing on June 15, 1988,[4] the Appeals Committee ordered Wallace to report and submit to a physical examination. Wallace failed to comply. At the "Step II" hearing held on June 23, 1988, the Appeals Committee refused to refer Wallace to Ryan–Walsh for re-employment. On July 25,

**2.** The record is unclear whether the benefits Wallace received at this time were pursuant to the TWCA or the LHWCA. Wallace's handwritten statement, Exhibit "A" to Defendant's Response, states "I received WC first at Federal rates, then State through Texas Employers. State was $217 a week, Federal was $560.00." Plaintiff's Reply, however, states that National Union Fire Insurance Carrier, Ryan–Walsh's carrier, commenced paying benefits at a $231 per week state rate, which was later raised to $616.96 per week. Wallace states that he received benefits for almost six months.

**3.** Article 8307c provides as follows:
  Section 1. No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.
  Section 2. A person who violates any provision of Section 1 of this Act shall be liable for reasonable damages suffered by an employee as a result of the violation, and an employee discharged in violation of the Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.
  Section 3. The district courts of the State of Texas shall have jurisdiction, for cause shown, to restrain violations of this Act.
Tex.Rev.Civ.Stat.Ann. art. 8307c (Vernon Supp. 1989).

**4.** Presumably, the June 15 hearing was a "Step I" hearing under the grievance procedures of the collective bargaining agreement.

1988, the Texas Industrial Accident Board issued an order awarding Wallace $9,471 in accrued benefits at the rate of $231.00 per week from October 23, 1987 until August 7, 1988, and $18,830.35 in benefits for future disability.

Ryan–Walsh removed the case from state court on July 15, 1988, and shortly thereafter filed its Motion to Dismiss. Ryan–Walsh's removal pursuant to 28 U.S. C. § 1441 is based on both diversity [5] and federal question jurisdiction. On July 26, 1988, plaintiff filed the motion at bar.

## II. DIVERSITY JURISDICTION

Plaintiff's Motion to Remand is grounded on 28 U.S.C. § 1445(c): "A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." Defendant's removal on diversity grounds, therefore, cannot be sustained if an action brought under article 8307c is viewed as "arising under" Texas workmen's compensation laws within the meaning of § 1445(c). Congress enacted § 1445(c) in order to restrict diversity jurisdiction. *Thomas v. Kroger Co.*, 583 F.Supp. 1031, 1036 (S.D.W.Va.1984); *Fernandez v. Reynolds Metals Co.*, 384 F.Supp. 1281, 1283 (S.D.Tex.1974); *National Sur. Corp. v. Chamberlain*, 171 F.Supp. 591, 594–95 (N.D.Tex.1959); S.Rep. No. 1830, 85th Cong., 2nd Sess., *reprinted in* 1958 U.S.Code Cong. & Admin. News 3099, 3103–06.

District courts sitting in other jurisdictions have considered whether various state law retaliatory discharge claims ran afoul of § 1445(c), and the overwhelming majority of those courts have ordered remand. *Orsini v. Echlin, Inc.*, 637 F.Supp. 38 (N.D.Ill.1986); *Alexander v. Westinghouse Hittman Nuclear Inc.*, 612 F.Supp. 1118 (N.D.Ill.1985); *Roberts v. Citicorp Diners Club, Inc.*, 597 F.Supp. 311 (D.Md. 1984); *Thomas*, 583 F.Supp. 1031; *Kemp v. Dayton Tire & Rubber Co.*, 435 F.Supp. 1062 (W.D.Okla.1977). The few cases denying motions to remand on § 1445(c)

grounds are distinguishable in that the retaliatory discharge cause of action at issue was not part of the statutory workmen's compensation scheme. *See Smith v. Union Carbide Corp.*, 664 F.Supp. 290, 292 (E.D.Tenn.1987) (judicially created tort); *Waycaster v. AT & T Technologies, Inc.*, 636 F.Supp. 1052, 1055 (N.D.Ill.1986) (retaliatory discharge action not created by statute and therefore considered common law).

Several district courts in Texas have considered the disposition of article 8307c claims in light of § 1445(c). *Fernandez*, apparently the first of these cases and often cited, held that § 1445(c) barred removal of an article 8307c claim. 384 F.Supp. at 1283. In an unreported decision, *De Santos v. P\*I\*E Nationwide, Inc.*, No. EP–86–CA–49 (W.D.Tex. April 14, 1986) (WESTLAW [1986 WL 15587]/LEXIS), another court reached the identical conclusion, finding that article 8307c was a "vital part" of the TWCA.

Rather recently, however, a district court in the Western District of Texas denied its plaintiff's motion to remand an article 8307c case that had been removed. That court held that removal of an 8307c claim on diversity grounds—the identical issue facing this Court—did not offend § 1445(c). *Richardson v. Owens–Illinois Glass Container, Inc.*, 698 F.Supp. 673 (W.D.Tex. 1988). The rationale of *Richardson* derived from recent decisions of Texas appellate courts which found that article 8307c claims are "separable from the compensation resulting from accidental injuries." *Id.; see Fidelity & Casualty Co. of New York v. Gaedcke Equipment Co.*, 716 S.W. 2d 542 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Artco–Bell Corp. v. Liberty–Mutual Ins. Co.*, 649 S.W.2d 722 (Tex. App.—Texarkana 1983, no writ). The issue before the Texas courts in *Gaedcke* and *Artco–Bell*, however, was whether an employer's liability insurance policy covering workmen's compensation benefits should be construed as including coverage for liability for retaliatory discharge claims as well. Ryan–Walsh supplemented its re-

---

**5.** The Removal Petition simply states that Ryan–Walsh is incorporated and has its principal place of business in a state "other than the State of Texas."

sponse to plaintiff's motion after the issuance of *Richardson,* urging this Court to follow that case.

This Court respectfully disagrees with *Richardson.* The state law conclusion that retaliatory discharge claims are separable from compensation for accidental injuries for insurance purposes does not control the question of whether the claim arises under the TWCA for purposes of § 1445(c). The United States Supreme Court and the Fifth Circuit have forcefully ruled that the construction of the removal statutes is governed by federal law:

> [T]he removal statutes and decisions of this Court are intended to have uniform nationwide application. 'Hence the [removal statutes] must be construed as setting up [their] own criteria, irrespective of local law, for determining in what instances suits are to be removed from the state to the federal courts.'

*Grubbs v. General Electric Credit Corp.,* 405 U.S. 699, 705, 92 S.Ct. 1344, 1349, 31 L.Ed.2d 612 (1971) (quoting *Shamrock Oil Corp. v. Sheets,* 313 U.S. 100, 104, 61 S.Ct. 868, 870, 85 L.Ed. 1214 (1941)); *Paxton v. Weaver,* 553 F.2d 936, 940–41 (5th Cir. 1977); *Crier v. Zimmer, Inc.,* 565 F.Supp. 1000, 1002 (E.D.La.1983). In *Paxton* the Fifth Circuit discussed the construction of another removal statute, 28 U.S.C. § 1441(c), which allows removal of an entire case in which a "separate and independent," yet removable, claim is joined with one or more non-removable claims. The court considered whether a state law contract claim for damages and rescission was "separate and independent" of a tort claim:

> Appellants suggest here that in fact tort and contract claims could be joined in one action in a Mississippi court of equity, where this suit was brought, the nonjoinder rule being applicable only in courts of law. But we need not decide niceties of Mississippi procedure, since although state substantive law determines the nature of rights and liabilities asserted, construction of the removal statute is a

question of federal law (citation omitted). Federal courts must apply the separate and independent test so as to carry out the intent to restrict removal.

553 F.2d at 940–41. The Fifth Circuit has also held that federal law determined the status of an intervenor for purposes of determining whether the intervenor alone, without the plaintiff, had standing to appeal the denial of a motion to remand which the district court had certified as an interlocutory appeal under 28 U.S.C. § 1292(b). *Brown v. Demco, Inc.,* 792 F.2d 478, 480–81 (5th Cir.1986).

▇▇▇ Based on the foregoing authority, this Court holds that the question of whether a civil action arises under state workmen's compensation laws for purposes of § 1445(c) is an issue the resolution of which is committed to a federal law analysis. *See Roberts,* 597 F.Supp. at 314. This Court therefore respectfully declines to follow *Richardson*'s reliance on Texas appellate court decisions, which themselves did not concern the § 1445(c) issue. State law may be consulted to determine the relationship between the retaliatory discharge claim and the workmen's compensation statute, but federal law supplies the standard. Further, the § 1445(c) "arising under" standard must be applied so as to carry out the well-known policy of restricting removal. *Paxton,* 553 F.2d at 940–41; *Thomas,* 583 F.Supp. at 1037.

The definition of "arising under" within the meaning of § 1445(c), however, is far less clear. The phrase is also found in § 1445(a), which bars removal of an action against a railroad or its receivers or trustees "arising under" §§ 51–60 of Title 45. Whether a claim arises under those provisions, however, is most likely ascertainable simply by reference to the complaint. "Arising under" appears in several jurisdictional grants in Title 28,[6] the most famous of which is the grant of federal question jurisdiction under § 1331. Section § 1331 confers federal question jurisdiction on the district courts for actions "arising under

---

**6.** *See, e.g.,* 28 U.S.C. § 1340 (arising under Internal Revenue laws); *id.* § 1338(a) (arising under

patent laws).

the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Importing "arising under" standards from § 1331 to § 1445(c), to the extent possible, seems logical.[7] In fact, there is no authority for the application of any other standard.[8]

The meaning of "arising under," however, is hardly less difficult in the context of § 1331. The question of whether a claim arises under federal law has generated vast amounts of case law. The phrase hardly lends itself to a precise definition, and its application inevitably varies case by case. This Court declines to engage in a detailed review of arising under jurisprudence. *See Franchise Tax Bd. v. Constr. Laborers Vac. Trust,* 463 U.S. 1, 103 S.Ct. 2841, 2845–46, 77 L.Ed.2d 420 (1983). One famous definition of arising under, however, was supplied by Justice Holmes some years ago: A suit arises under the law that creates the cause of action. *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). The Fifth Circuit has endorsed this standard. *Lowe v. Ingalls Shipbuilding,* 723 F.2d 1173, 1178 (5th Cir. 1984); *Superior Oil Co. v. Pioneer Corp.,* 706 F.2d 603, 605 (5th Cir.1983).

█ Applying Justice Holmes' time-honored dictate, it is clear that an article 8307c cause of action arises under the TWCA and that removal of an article 8307c claim is therefore barred. Article 8307c, which is found amongst the other provisions of the Texas workmen's compensation laws, redresses a wrong that occurs when employers discriminate against employees who file workmen's compensation claims. Adjudication of Wallace's 8307c lawsuit will require an analysis of whether his employer was motivated to retaliate against him for exer-

cising legal rights provided for by the TWCA. The sole purpose of 8307c is to insure full and meaningful exercise of the rights provided for injured workers under the Texas Workmen's Compensation laws. Article 8307c is therefore an inextricable part of the workmen's compensation laws of Texas and in fact would not exist but for the TWCA. In this sense, an article 8307c lawsuit can fairly be said to be a civil action arising under the workmen's compensation laws of Texas, according to the standard supplied by Justice Holmes. Whether this Court interprets the "arising under" language of § 1445(c) correctly or not, the conclusion that article 8307c claims arise under Texas workmen's compensation laws and are thus non-removable rests comfortably with two major policies announced in removal jurisprudence, namely, that federal courts must apply the removal statutes in a manner that carries out the intent of Congress to restrict removal, *see Paxton,* 553 F.2d at 940–41, and that cases should be remanded if jurisdiction is doubtful, *see Thomas,* 583 F.Supp. at 1037; *Fernandez,* 384 F.Supp. at 1283.

Accordingly, this court holds that Wallace's civil action under article 8307c arises under Texas workmen's compensation laws and that, therefore, removal of this case on diversity grounds is barred by § 1445(c).[9] Ryan–Walsh, however, also argues the existence of federal question jurisdiction. Ryan–Walsh's position is that Wallace's claim is pre-empted by and is actually a claim arising under federal law. If true, removal on this basis would not offend § 1445(c) because the claim would be converted to a federal claim and would no

---

7. In *Roberts* Judge Kaufman also utilized the § 1331 "arising under" standard in conducting a § 1445(c) inquiry. 597 F.Supp. at 313–14.

8. This Court has found neither a Circuit nor a Supreme Court opinion which defines an "arising under" standard particularized to the § 1445(c) situation. In light of the policy of restricting removal, this Court suggests that a useful inquiry might be to ascertain whether the claim is pursuant to the same statutory scheme in which the other workmen's compensation provisions are found.

9. This holding comports with the Fifth Circuit's disposition of a retaliatory discharge claim brought under Louisiana law in *LeSassier v. Chevron USA, Inc.,* 776 F.2d 506, 508 (5th Cir. 1985), discussed more fully later in this opinion. In *LeSassier* the Fifth Circuit treated the plaintiff's claim as falling under the provisions of 43 U.S.C. § 1333(b), which addresses claims for disability or death occurring on the outer continental shelf, but which does not specifically enumerate retaliatory discharge claims.

longer arise under state law. The Court now addresses this contention.

## III. FEDERAL QUESTION JURISDICTION

28 U.S.C. § 1441(a) allows removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction...." One such category of cases over which the district courts have original jurisdiction is those "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, federal question cases. The so-called "well-pleaded complaint rule" was created to test the propriety of federal question jurisdiction following removal to federal court. The federal question giving rise to jurisdiction must be discernible by reference to the plaintiff's "well-pleaded complaint." *See, e.g., Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. California,* 463 U.S. 1, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983); *O'Quinn v. Manuel,* 773 F.2d 605, 607 (5th Cir.1985). In applying the rule, it is well-established that the federal question must be disclosed on the face of the complaint, "unaided by the answer or by the petition for removal." *Gully v. First Nat'l Bank,* 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936). Without more, Wallace's state court Petition would not give rise to federal question jurisdiction, since it is brought solely under Texas law and raises no issue of federal law.

■ The well-pleaded complaint rule has produced obvious tension when applied to state claims pre-empted by federal law. Federal pre-emption is ordinarily raised as a defense to the plaintiff's claim. The Supreme Court, however, has steadfastly maintained the position that a defense of pre-emption does not create federal question jurisdiction, even if the defense is anticipated and raised in the complaint. *Caterpillar,* 107 S.Ct. at 2430; *Taylor,* 107 S.Ct. at 1546. The mere implication of a question of federal law does not create federal question jurisdiction. *Oliver v. Trunkline Gas Co.,* 796 F.2d 86, 89 (5th Cir.1986); *Lowe,* 723 F.2d at 1178.

■ Mindful of pre-emption, federal question jurisprudence began eroding the well-pleaded complaint rule's obsession with the plaintiff's complaint in limited situations. In its response to the plaintiff's motion, Ryan–Walsh urges the application of the so-called "artful pleading" exception to the rule. This very narrow exception converts a state law complaint into federal law when the plaintiff attempts to defeat removal by fraudulent means or by artfully omitting essential federal questions in the complaint. *Beers v. North American Van Lines, Inc.,* 836 F.2d 910, 913 (5th Cir. 1988); *Illinois v. Kerr–McGee Chem. Corp.,* 677 F.2d 571, 575 (7th Cir.1982); *Villarreal v. Brown Express, Inc.,* 529 F.2d 1219, 1221 (5th Cir.1976); *Orsini,* 637 F.Supp. at 41. In *Beers* the Fifth Circuit considered whether a complaint stating various state law claims that were pre-empted to some extent by the Interstate Commerce Act fell within the artful pleading exception. Concluding negatively, the court stated, "There is no suggestion, however, of fraudulent means or artful pleadings in the case before us today. The Beerses pled a straight state law insurance contract claim. North American defended with a claim of federal law preemption." 836 F.2d at 913. Likewise, there is nothing in the record of the case at bar which would necessitate the conclusion that Wallace has attempted to evade removal by fraudulent means or artful omissions of federal law. Notwithstanding whether his 8307c claim is pre-empted, he has pled a "straight" state law retaliatory discharge claim.

Another more significant exception to the well-pleaded complaint rule emanates from the Supreme Court's landmark holding in *Avco Corp v. Aero Lodge No. 735, Int'l Ass'n of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). In *Avco* the Supreme Court carved out a limited exception to the well-pleaded complaint rule for state law causes of action entirely

displaced by a federal statute whose pre-emptive force is so strong, that state law claims made inoperative by the statute are considered, from inception, as federal claims. *Id.* 88 S.Ct. at 1237–38; *see also Franchise Tax Bd.*, 103 S.Ct. at 2853. *Avco* held that state claims pre-empted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, are necessarily federal in character. Therefore, state law claims pre-empted by § 301 are removable even if the complaint raises no issue of federal law.[10] In *Taylor* the Supreme Court extended *Avco* to state law claims pre-empted by ERISA § 502. 107 S.Ct. at 1547–48. The Supreme Court has recently referred to this exception as the "complete pre-emption" doctrine. *Caterpillar*, 107 S.Ct. at 2430.

Whether the complete pre-emption doctrine should extend to state law causes of action entirely displaced by any provision of the LHWCA has been the subject of judicial inquiry with no current resolution. A Fifth Circuit panel held that the question of whether the LHWCA is powerful enough to satisfy *Avco* and *Taylor* was "easily answered in the affirmative." *Texas Employers' Ins. Ass'n v. Jackson*, 820 F.2d 1406, 1419 (5th Cir.1987).[11] The Fifth Circuit granted rehearing en banc, 828 F.2d 1 (5th Cir.1987),[12] however, and in its en banc decision, expressly declined to resolve "this difficult issue." 862 F.2d 491, 496–97 n. 8 (5th Cir.1988).[13]

This Court also need not address the issue. The complete pre-emption doctrine obviously requires substantive pre-emption of the plaintiff's state law claim. This Court finds no pre-emption in the case at bar.

### A. LHWCA Pre-emption: The Twilight Zone

■ Ryan–Walsh argues that Wallace's retaliatory discharge claim is pre-empted by its LHWCA counterpart, 33 U.S.C. § 948a.[14] The history and purposes of the LHWCA have been described amply enough in the case law to warrant no more than a brief summary here. LHWCA jurisprudence has its genesis early in this century. In *Southern Pac. Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 528–29, 61 L.Ed. 1086 (1917), the Supreme Court ruled that states' attempts to apply their workmen's compensation laws to maritime injuries were constitutionally impermissible, thereby establishing the so-called *Jensen* line, where land meets water, at which point state jurisdiction concluded. In the ensuing years, the Court softened the rigid *Jensen* line somewhat, allowing states to extend their compensation coverage schemes to maritime circumstances that were maritime but "local in character." *See Western Fuel Co. v. Garcia*, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921). Still, many longshoremen injured on navigable water were

---

**10.** The Fifth Circuit recently held that *Avco* applies to state law claims pre-empted by the duty of fair representation imposed by §§ 8(b) and 9(a) of the National Labor Relations Act, 29 U.S.C. §§ 158(b), 159(a). *Richardson v. United Steelworkers of America*, 864 F.2d 1162 (5th Cir.1989).

**11.** Judge Jones vociferously dissented on this issue. 820 F.2d 1422, 1424 (Jones, J., dissenting).

**12.** The granting of a rehearing en banc vacates the panel decision. *Selvage v. Lynaugh*, 842 F.2d 89, 91 (5th Cir.1988).

**13.** Judges Brown and Williams would have extended *Avco* and *Taylor* to the LHWCA. 862 F.2d at 510–13 (Brown, J., and Williams, J., concurring in part and dissenting in part). This Court notes that of the four Fifth Circuit Judges to address the issue, three—Judges Brown, Reavley and Williams—would find that LHWCA preemption indeed satisfies *Avco* and *Taylor*.

**14.** Section 948a provides, in relevant part:

It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer, or because he has testified or is about to testify in a proceeding under this Act.... Any employee so discriminated against shall be restored to his employment and shall be compensated by his employer for any loss of wages arising out of such discrimination: Provided, That if such employee shall cease to be qualified to perform the duties of his employment, he shall not be entitled to such restoration and compensation.

33 U.S.C. § 948a.

left without a remedy. Congress responded in 1927 by enacting the LHWCA as a federal compensation law.

With the enactment of the LHWCA, workers injured upon the navigable waters had compensation to redress their injuries. In its original version, however, the LHWCA's coverage stopped at the shoreline, allowing compensation for injuries occurring "on the navigable waters," but only if compensation under state law was unavailable. Pub.L. No. 69–803, ch. 509, § 3(a), 44 Stat. 1424, 1426 (1927). The line of demarcation between federal and state coverage, however, was often difficult to ascertain. As a result of the "doubtful jurisdictional line," the Supreme Court, in *Davis v. Department of Labor*, 317 U.S. 249, 256, 63 S.Ct. 225, 229, 87 L.Ed. 246 (1942), recognized for the first time that the area surrounding the "doubtful" line was a fact-sensitive "twilight zone," where "employees must have their rights determined case by case." *Calbeck v. Travelers Ins. Co.*, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962), further advanced the notion of concurrent federal and state jurisdiction, holding that the LHWCA covered all injuries on the navigable waters even if a case of injury was also within the reach of state compensation laws. *Id.* 370 U.S. at 126–27, 82 S.Ct. at 1203–04. At this point in its jurisprudential evolution, although "maritime but local" injuries fell within the twilight zone's concurrent jurisdiction, the

LHWCA's reach still stopped at the water's edge.

This produced a disparity in benefits for the same type of injury, depending on which side of the water's edge the injury occurred. Congress ameliorated this disparity in 1972 with amendments to the LHWCA's coverage provision which extended the LHWCA landwardly. The LHWCA came ashore when its coverage provision was amended to include injuries "occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)." 33 U.S.C. § 903(a).[15] *See* Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, Pub.L. No. 92–576, § 2(a), 86 Stat. 1251; H.R.Rep. No. 1441, 92nd Cong., 2nd Sess., *reprinted in* 1972 U.S.Code Cong. & Admin. News 4698, 4707–08.

Any doubts about the effect of the landward extension of the LHWCA on the twilight zone were retired by the Supreme Court's latest seminal expression in the area, *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980). Five employees of Sun Ship, Inc., a shipbuilding and ship repair outfit located on the Delaware River,[16] were injured on

---

**15.** Coverage under the LHWCA is currently determined under a two-prong test composed of a "status" requirement and a "situs" requirement. *Director, Office of Workers' Compensation Programs v. Perini North River Assoc.*, 459 U.S. 297, 103 S.Ct. 634, 637, 74 L.Ed.2d 465 (1983); *P.C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 100 S.Ct. 328, 332, 62 L.Ed.2d 225 (1979); *Texports Stevedore Co. v. Winchester*, 632 F.2d 504 (5th Cir.1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3031, 69 L.Ed.2d 406. The status prong is satisfied if the employee was "engaged in maritime employment" at the time of his injury. 33 U.S.C. § 902(3). The situs prong is met if the employee's injury occurred "upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)." 33 U.S.C. § 903(a).

The Fifth Circuit, in *Winchester*, found that a worker employed as a "gear man" with duties

rather similar to Wallace's fell within the status test. 632 F.2d at 516. The situs prong has been the source of considerable amounts of litigation in situations in which the employee is injured on land away from the shoreline, but within the scope of his maritime employment. It is difficult to ascertain whether Wallace's reinjury giving rise to his retaliatory discharge claim occurred inland while refueling his superintendent's truck or on the dock when he returned. In *Winchester*, however, the Fifth Circuit found that the plaintiff, who was injured at a gear room five blocks from the waterfront, met the situs test. This liberal view of the situs prong comports with policy against workers walking in and out of coverage. *Id.* In any event, no one here challenges Wallace's LHWCA coverage.

**16.** The Delaware River is a navigable water of the United States. *Id.* 100 S.Ct. at 2434.

land and filed a claim for state workmen's compensation benefits under the Pennsylvania Workmen's Compensation Act. The state Appeal Board affirmed the award of benefits to the workers, but the Commonwealth of Pennsylvania challenged the benefits awards, asserting that the LHWCA was the workers' exclusive remedy. The Supreme Court affirmed:

> Given that the pre–1972 Longshoremen's Act ran concurrently with state remedies in the "maritime but local" zone, it follows that the post–1972 expansion of the Act landward would be concurrent as well. For state regulation of worker injuries is even more clearly appropriate ashore than it is upon navigable waters.

*Id.* 100 S.Ct. at 2436. In other words, when the LHWCA came ashore in 1972, the twilight zone followed. *Sun Ship* makes crystal clear the notion that workers injured on land, yet who fall within LHWCA coverage, are within the twilight zone and may pursue federal or state compensation benefits.[17]

The twilight zone, therefore, is a specie of maritime law in which overlapping jurisdictional spheres create concurrent jurisdiction between the LHWCA and state laws. Currently, maritime injuries fall within three jurisdictional spheres. At the seaward extreme, the LHWCA is the exclusive remedy. For injuries occurring on land outside the jurisdictional grasp of the LHWCA, state law alone governs. In the twilight zone, however, "maritime but local" injuries may be compensated by federal or state law. *Id.* at 2436; *In re All Maine Asbestos Litigation (BIW Cases),*

589 F.Supp. 1563, 1568 (D.Maine 1984) (hereinafter *In re All Maine*); *see* 1A Benedict on Admiralty § 10 (1987). Since Carroll Wallace was injured on land, yet is covered by the LHWCA, he falls in the twilight zone and the LHWCA does not pre-empt his state law retaliatory discharge claim.

The parties battle fervently over the applicability of *LeSassier v. Chevron USA, Inc.,* 776 F.2d 506 (5th Cir.1985). LeSassier suffered injury while working on a fixed platform situated on the outer Continental Shelf just off the Louisiana coast. He filed a successful claim for benefits under the LHWCA, and was subsequently discharged. He then brought a diversity action in federal district court under Louisiana law, alleging that his discharge violated a Louisiana statute proscribing retaliatory discharge. The district court granted Chevron's motion for summary judgment, and the Fifth Circuit affirmed. *Id.* at 510. Ryan–Walsh strenuously urges this Court to interpret the Fifth Circuit's holding as a proclamation that a worker cannot collect LHWCA benefits and also maintain a state law claim for retaliatory discharge.

Ryan–Walsh's interpretation of *LeSassier* is misplaced. Because of its logistics, LeSassier's injury was governed by the Outer Continental Shelf Lands Act (OCSLA). OCSLA specifically adopts the LHWCA as the exclusive means for compensating injuries occurring as the result of operations conducted on the outer Continental Shelf. 43 U.S.C. § 1333(b).[18] State law, therefore, has no application to inju-

---

**17.** Workers who initially claim benefits under state law will generally be able to receive additional benefits under the LHWCA. 100 S.Ct. at 2438. To avoid double recovery, a worker who receives state benefits, then pursues federal benefits, may be required to credit the state benefits against the federal and vice versa. *Landry v. Carlson Mooring Serv.,* 643 F.2d 1080, 1088 (5th Cir.1981), *cert. denied,* 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109; *Johnson v. Texas Employers Ins. Ass'n,* 558 S.W.2d 47, 52 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.).

**18.** OCSLA allows adjacent states to apply their laws to activities on the outer Continental Shelf "[t]o the extent that they are applicable and not inconsistent with this Act or with other Federal

laws and regulations...." 43 U.S.C. § 1333(a)(2)(A). The Fifth Circuit made clear, however, that OCSLA commits Shelf-related injuries to the exclusive jurisdiction of the LHWCA. *Id.* at 509–10.

43 U.S.C. § 1333(b), adopting the LHWCA as the exclusive remedy, does not specifically refer to retaliatory discharge claims. The Fifth Circuit, however, treated the claim the same as a claim resulting from death or disability. This treatment buttresses this Court's earlier determination that retaliatory discharge claims brought pursuant to state statute arise out of state workmen's compensation laws for purposes of 28 U.S.C. § 1445(c).

ries occurring on the Shelf.[19] The Fifth Circuit distinguished the facts before it from the *Sun Ship* scenario and stated that the twilight zone was in no way involved. 776 F.2d at 509.

This holding contradicted an earlier holding of the Louisiana Supreme Court in *Thompson v. Teledyne Movible Offshore, Inc.,* 419 So.2d 822 (La.1982), *appeal dismissed,* 464 U.S. 802, 104 S.Ct. 48, 78 L.Ed. 2d 69 (1983), which held that workers injured on the outer Continental Shelf are within the jurisdictional grasp of Louisiana Courts because they are in the twilight zone. The court there held that concurrent jurisdiction did not offend OCSLA. *Id.* at 828. For present purposes, the significance of *Thompson* is its appellate disposition. Teledyne appealed to the United States Supreme Court, which dismissed the appeal for want of a substantial federal question. 464 U.S. 802, 104 S.Ct. 48, 78 L.Ed.2d 69 (1983). Ryan–Walsh correctly notes that the dismissal of an appeal for want of a substantial federal question is a disposition on the merits. *Hicks v. Miranda,* 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975). Accordingly, Ryan–Walsh asks this Court to view the summary disposition of *Thompson* as a rubber stamp on the Louisiana Supreme Court's holding of concurrent jurisdiction. Such a view would in turn lead to the incorrect conclusion that *LeSassier* prohibits state retaliatory discharge claims when the claimant has received LHWCA benefits.

The summary disposition of *Thompson* must be interpreted in terms of the appellate points raised. The Supreme Court's appellate jurisdiction of final judgments of the highest court of a state is governed by 28 U.S.C. § 1257(1)–(2).[20] Teledyne appealed under § 1257(2), which allows appeals challenging the validity of a state statute on the grounds that it is repugnant to the Constitution, treaties or laws of the United States when the state's highest court has rendered a decision in favor of its validity. Jurisdictional Statement at 2, *Teledyne Movible Offshore, Inc. v. Thompson.* Therefore, the most remarkable conclusion to be drawn from the Supreme Court's summary disposition of *Thompson* is that some Louisiana statute, presumably the workmen's compensation law, is Constitutional.

Ryan–Walsh's argument is in actuality an attempt to invoke the election of remedies doctrine. That is, by pursuing LHWCA benefits, Wallace has elected to fall under federal law and has irretrievably abandoned pursuing his rights under Texas workmen's compensation laws. Twilight zone jurisprudence, however, is unequivocally clear that the election of remedies doctrine is inapplicable because, within the zone, federal and state remedies are concurrently available and are therefore not irreconcilable. *Calbeck,* 82 S.Ct. at 1205–06; *Landry,* 643 F.2d at 1087–88; *In re All Maine,* 589 F.Supp. at 1569; 4 A. Larson, *The Law of Workmen's Compensation* § 89.74.

Even within the twilight zone, however, conflicts between federal and state laws may occur such that pre-emption is nevertheless invoked. Where Congress has not entirely displaced state law, state laws in that area are pre-empted only when there is an actual conflict with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility" or when state law "stands as an obstacle to the accomplishment of the full purposes and objectives of

---

**19.** *See also Gates v. Shell Oil,* 812 F.2d 1509, 1514 (5th Cir.1987) (since OCSLA adopts LHWCA, "statutory employer" defense under state law inoperative).

**20.** Section 1257(1)–(2) provides as follows:

Final judgments or decrees rendered by the highest Court of a State in which a decision could be had, may be reviewed by the Supreme Court as follows:

(1) By appeal, where is drawn in question the validity of a treaty or statute of the United States and the decision is against its validity.

(2) By appeal, where is drawn in question the validity of a statute of any state on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor if its validity.

28 U.S.C. § 1257(1)–(2). Teledyne did not petition for writ of certiorari under 28 U.S.C. § 1257(3).

Congress." *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983); *Osburn v. Anchor Laboratories, Inc.*, 825 F.2d 908, 911 (5th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1476, 99 L.Ed.2d 705. An inter-zone conflict giving rise to pre-emption existed in *Colombo v. Johns–Manville Corp.*, 601 F.Supp. 1119 (E.D.Pa.1984). In *Colombo* an employee of a shipyard owned by the United States sued various manufacturers of asbestos-containing products, alleging that he had developed asbestos-related injuries while employed at the shipyard. A defendant brought a third-party action against the United States, seeking indemnity or contribution from the United States for any liability to the plaintiff it might incur. The court held that, since its interpretation of the LHWCA would allow such a third-party claim against the United States in its capacity as vessel owner, a state law precluding such an action was pre-empted. *Id.* at 1136.[21]

Ryan–Walsh has pointed to no inter-zone conflict. Indeed, it would be difficult to envision how Wallace's state law claim and its federal counterpart, 33 U.S.C. § 948a, might conflict. Both provisions simply establish prohibitions against retaliatory discharge within their respective statutory regimes. Their respective adjudications involve different procedural channels.[22] Such procedural differences, however, are not a conflict that would require preclusion. *See also United States v. Thomas*, 709 F.2d 968, 971 (5th Cir.1983). In conclusion, Wallace's membership in the twilight zone has afforded him the right to pursue both federal and state laws as he chooses, and there is no pre-emption because he has chosen state law.

## B. Labor Law Pre-emption

As the sun sets on its twilight zone analysis, Ryan–Walsh lastly urges that Wallace's claim is pre-empted by federal labor laws. The subject of labor law pre-emption of state law claims has been the subject of recent activity by the Supreme Court. In *Lingle v. Norge Division of Magic Chef, Inc.*, — U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the plaintiff brought a suit for retaliatory discharge under Illinois law.[23] The Court considered whether the claim was pre-empted by § 301 of the LMRA. Consistent with prior cases addressing LMRA preemption,[24] the Court

---

**21.** No such conflict existed in *Garvin v. Alumax of South Carolina, Inc.*, 787 F.2d 910 (4th Cir. 1986), *cert. denied,* 479 U.S. 914, 107 S.Ct. 314, 93 L.Ed.2d 288. A longshoreman was injured while doing maintenance work on a ship loader located upon a pier. He sued several defendants under state tort law, including the contractor-owner of the machine who had contracted with his immediate employer for its operation and maintenance. The contractor moved to dismiss, claiming that it was a statutory employer and therefore immune under South Carolina law. The court held that the state law did not conflict with the LHWCA. *Id.* at 916–18. *See also In re All Maine*, 589 F.Supp. at 1568 (rights of unrelated third parties against covered employees not pre-empted); *Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, 813 (5th Cir. 1988) (LHWCA exclusivity provision preempted employee's state law bad faith claim against benefits administrator).

In *Sun Ship* the Supreme Court recognized the possibility that a conflict between the LHWCA and a state wokers' compensation law might occur if the state law declares its awards final and the claimant seeks inferior state benefits first, then attempts to claim LHWCA benefits. 100 S.Ct. at 2438 n. 6. The TWCA does not declare its awards final. *Landry*, 643 F.2d at 1085.

**22.** Under the LHWCA, a longshoreman must proceed administratively. Initial hearings are before an Administrative Law Judge, 33 U.S.C. § 919(d), who may be appealed to the Benefits Review Board (BRB), *id.* § 921(b). Finally, a claimant disgruntled with the finding of the BRB may appeal to the circuit court. *Id.* § 921(c). Under the Texas retaliatory discharge provision, state district courts have original jurisdiction. Tex.Rev.Civ.Stat.Ann. art. 8307c, § 3 (Vernon Supp.1989).

**23.** The cause of action was not based upon any specific statutory provision, but was apparently an implied civil cause of action recognized by Illinois courts as a result of a statute prohibiting discriminatory firings. *Id.* 108 S.Ct. at 1882 n. 6. *Lingle* 's holding applies to statutory causes of action for retaliatory discharge as well. *Wolfe v. Central Mine Equipment Co.*, 850 F.2d 469 (8th Cir.1988).

**24.** In *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Court found that § 301 pre-empted a Wisconsin

found no pre-emption of the plaintiff's state law claim, holding that § 301 does not pre-empt state laws unless the resolution of the state law claim depends on the meaning of the collective bargaining agreement itself.[25] *Id.* 108 S.Ct. at 1881. It is insufficient that resolution of the claim under state law would require an analysis of the same set of operative facts as its resolution under the collective bargaining agreement. Rather, resolution of the claim must require an interpretation of the agreement itself. *Id.* at 1883.

Resolution of claims brought under article 8307c apparently requires no such interpretation. Article 8307c's straightforward provisions confer jurisdiction in state district courts for discrimination "against any employee because the employee has in good faith filed a claim...." Tex.Rev.Civ. Stat.Ann. art. 8307c (Vernon Supp.1989). The statute does not refer in any way to collective bargaining agreements. This view is buttressed by Texas case law, which holds that an employee may commence an action under article 8307c at any time before he has completely exhausted grievance procedures pursuant to the agreement. *Spainhouer v. Western Elec. Co.,* 615 S.W.2d 190, 191 (Tex.1981); *Carnation Co. v. Borner,* 610 S.W.2d 450, 453

(Tex.1980); *Bonner v. Fleming Companies,* 734 S.W.2d 764, 765 (Tex.App.—Fort Worth 1987, writ dism'd). The availability of alternate procedural routes to challenge alleged retaliatory conduct, apparently subject only to the claimant's choice, indicates that article 8307c claims are independent of collective bargaining agreements. Under *Lingle,* therefore, claims brought under 8307c are not pre-empted by § 301 of the LMRA.[26]

In *Lingle* the Supreme Court made clear that federal labor laws other than § 301 may pre-empt state claims. Ryan–Walsh has pointed to no other labor law, but the obvious candidates for consideration are §§ 7 and 8 of the National Labor Relations Act (NLRA),[27] 29 U.S.C. §§ 157–58, to which the Supreme Court, in *Lingle,* in fact specifically referred. 108 S.Ct. at 1883 n. 8. The analytical regime under these provisions begins with *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959). In *Garmon* the Court held that "when the activities which a state purports to regulate are protected by § 7 of the NLRA, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." The Court there added that if an activity is

remedy for bad faith handling of an insurance claim as applied to the handling of a claim for disability benefits that were authorized by a collective bargaining agreement. The Court reasoned that, since the claim existed by virtue of a duty upon the insurer arising out of the agreement, an analysis of the agreement, insofar as it concerned the scope of the duty, was necessary to adjudicate the claim. *Id.* 105 S.Ct. at 1914. The dependency of pre-emption on an interpretation of the agreement originated in *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

**25.** Wallace filed a Supplemental Memorandum in Opposition, alleging that, as a gearman, he is not covered under the collective bargaining agreement between Ryan–Walsh "as a member of the West Gulf Maritime Association" and the ILA. Therefore, he argues, his claim cannot be the subject of labor law pre-emption. Ryan–Walsh disputes this assertion by offering the deposition testimony of Don Howard, Ryan–Walsh's vice-president, who stated that a gearman is within the agreement by "past practice," although not specifically written into the agreement.

Whether a gearman is covered by the agreement, however, is irrelevant to the pre-emption analysis, since this Court determines under *Lingle* that an article 8307c claim is not dependent on the collective bargaining agreement.

**26.** Before *Lingle,* a district court in Texas reached the same conclusion, *Benton v. Kroger Co.,* 635 F.Supp. 56, 58 (S.D.Tex.1986), despite a provision in the agreement providing for discharge only for "proper cause."

**27.** The NLRA was enacted in 1935. Ch. 372, 49 Stat. 452 (1935). In 1947, Congress passed the Taft–Hartley Act, which expanded and revised the NLRA. Labor Management Relations Act, 1947, ch. 120, 61 Stat. 140. That Act also renamed it the LMRA, although the term NLRA is still frequently used to describe those portions of the original NLRA still having force and effect. Sections 7 and 8(a) of the NLRA protect against employer unfair labor practices. Section § 8(b), added by the Taft–Hartley Act, prohibits unfair labor practices of unions.

arguably subject to § 7 or § 8 of the Act, jurisdiction in state and federal courts must yield to the National Labor Relations Board. A state statute otherwise within *Garmon*'s pre-emption formula, however, will not be pre-empted if the conduct it regulates is "a merely peripheral concern of the [LMRA]" or touches interests "so deeply rooted in local feeling and responsibility that, in the absence of compelling Congressional direction, it could not be inferred that Congress had deprived the states of the power to act." 79 S.Ct. at 778–79; *see also New York Tel. Co. v. New York Dept. of Labor*, 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979) (NLRA does not prohibit New York from paying unemployment compensation to strikers); *Farmer v. United Bhd. of Carpenters & Joiners*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (tort action under California law for intentional infliction of emotional distress not pre-empted).

A second doctrine in this area leads to a finding of preemption if the state law at issue interferes with the policies implicated by the structure of the NLRA itself concerning conduct that Congress intended to be unregulated. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 2394, 85 L.Ed.2d 728 (1985). This doctrine is aimed at conduct that is neither arguably protected nor prohibited by federal labor law and emanates from the Supreme Court case of *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976), in which the Court forbade state penalization of a concerted refusal to work overtime that was neither protected nor prohibited by federal labor law. 105 S.Ct. at 2395.

With respect to causes of action similar to the one at bar, this Court does not write on a clean slate. The Ninth Circuit has held that a state claim for wrongful termination was not pre-empted for public policy reasons, where the claim was distinct from any contractual remedy arising from labor-management relations and did not offend the collective bargaining process. *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367, 1374–75 (9th Cir.1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839. Of greater significance, the Tenth Circuit has held that an Oklahoma retaliatory discharge statute strikingly similar to article 8307c was not pre-empted by §§ 7 or 8 of the NLRA. *Peabody Galion v. Dollar*, 666 F.2d 1309, 1316–19 (10th Cir. 1981). Several other courts have reached the same result in similar contexts. *Sutton v. Southwest Forest Indus.*, 628 F.Supp. 1034, 1036 (D.Kan.1985); *Messenger v. Volkswagen of America, Inc.*, 585 F.Supp. 565, 569–70 (S.D.W.Va.1984); *Sherman v. St. Barnabas Hosp.*, 535 F.Supp. 564, 575–77 (S.D.N.Y.1982). The Texas Supreme Court has specifically ruled that article 8307c does not run afoul of *Garmon*. *Ruiz v. Miller Curtain Co.*, 702 S.W.2d 183, 185 (Tex.1985). In light of these authorities, this Court holds that federal labor law does not pre-empt article 8307c.

Case Remanded.