STATE OF KANSAS, ex rel. Ron TODD, Commissioner of Insurance of the State of Kansas, Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

No. 91–4016–C.

United States District Court, D. Kansas.

March 10, 1992.

Motion to Alter or Amend Judgment and for Reconsideration Granted in Part May 6, 1992.

John W. Campbell, Office of Atty. Gen., Topeka, Kan., for plaintiff.

Jackie A. Rapstine, U.S. Attys. Office, Topeka, Kan., Thomas W. Millet, Renee M. Wohlenhaus, Dept. of Justice, Civ. Div., Washington, D.C., Stuart M. Gerson, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on cross motions. Defendants move for judgment on the pleadings or, in the alternative, for summary judgment (Dk. 13). Plaintiff moves for summary judgment (Dk. 17). Plaintiff filed this action seeking declaratory and injunctive relief, in particular, an order invalidating and enjoining the enforcement of 7 C.F.R. §§ 400.351 and 400.-352 (1991). The principal issue in this suit is the authority of the Federal Crop Insurance Corporation ("FCIC") to adopt these regulations which expressly preempt all state or local laws, rules or regulations "that directly or indirectly affect or govern," § 400.352, "all policies of insurance, insured or reinsured by the Corporation, contracts, agreements, or action authorized by the Act [Federal Crop Insurance Act] and entered into or issued by FCIC," § 400.351.

Summary judgment is appropriate when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Even though there is some dispute over what facts are relevant, the parties do agree that the issues are appropriately presented for the court to decide at summary judgment.

Through the Federal Crop Insurance Act, 7 U.S.C. §§ 1501 *et seq.*, Congress created the FCIC in 1938 for the purpose of "improving the economic stability of agriculture through a sound system of crop insurance." 7 U.S.C. §§ 1502 and 1503. In 1945, the administration of the FCIC was transferred to the Secretary of Agriculture. In 1980, Congress amended the FCIA with the intention of making federally subsidized crop insurance available for all producers and commodities. The FCIC subsidizes the rates at which the insurance is offered and establishes the terms and conditions for the insurance. 7 U.S.C. § 1508.

The FCIC delivers crop insurance through three vehicles. Licensed private insurance agents and brokers sell policies issued by the FCIC and are compensated from the premiums paid. 7 U.S.C. § 1507(c)(3). The FCIC provides reinsurance to insurers which sell crop insurance policies issued in the insurer's name. 7 U.S.C. § 1507(c); § 1508. County offices of the Agricultural Stabilization and Conservation Service (ASCS) also directly provide federal crop insurance. 7 U.S.C. § 1508(a).

On policies reinsured by the FCIC, its Board determines if the policies will adequately protect the producers' interests and then approves the policies for sale at such rates, terms and conditions that it deems appropriate. 7 U.S.C. § 1508(b)(3). To insure fairness and equity between producers, the FCIC pays a portion of the producer's premium for the insurance that is reinsured. 7 U.S.C. § 1508(h). The FCIC is also required to pay the operating and administrative costs of the insurers on which reinsurance is provided to the same extent that those costs would be covered by the FCIC on FCIC-issued policies. 7 U.S.C. § 1508(h). All policies issued by the private insurers include language explaining that the FCIC has reinsured the policy and that all terms, conditions, rights and responsibilities thereto are subject to the FCIA and the FCIC's regulations.

After the notice and comment period, the FCIC published the final regulation on June 6, 1990, which, in part, prescribed the rules for federal preemption of inconsistent state laws or regulations. The regulation was made applicable to all policies, issued or reinsured by the FCIC, and all contracts or actions authorized by the Act and entered into or issued by the FCIC. The regulation expressly precluded state and local governments from taxing premiums and exercising approval authority over the insurance policies.

In the supplementary information published with the proposed regulations, the FCIC identified the policy reasons behind its actions. To insure equal treatment of all insurance recipients, the FCIC announced its intention of having one set of regulations with one common policy which would govern all insurance policies whether issued by the FCIC or by a private insurer under a FCIC reinsurance agreement. The FCIC believed its preemptive authority needed clarifying and defining because of problems encountered with state laws and regulations. The FCIC cited the example where state regulation required changes to federally approved policies thereby causing disparate levels of assistance to recipients based on whether their policy was issued by the FCIC or by a private insurer and based on where the recipients lived. Another example is that many states have been taxing premiums on reinsured policies. Even though the FCIC is exempt from state taxes, 7 U.S.C. § 1511, it must reimburse the private insurers for their expenses, 7 U.S.C. § 1508(h). Consequently, the incidence of these taxes has fallen to the FCIC which estimates that it paid over $15 million in the 1989 as reimbursements for state premium taxes.[1] The FCIC also noted that punitive or multiplication of damage awards under state law claims had been entered against private insurers because of their actions in compliance with the FCIA or the FCIC's procedures and regulations. Since private insurers cannot accept the risk of these damage awards unless the FCIC promises repayment, this means the funds appropriated from Congress will be used for a purpose that bears no relation to the insured loss which has occurred. The FCIC hopes by limiting such regulatory authority to one level that the interests and purposes of the federal crop insurance program will be served through consistent and direct federal administration.

Because the plaintiff is challenging the constitutional validity of FCIC's regulations, the court will take the issues from plaintiff's brief.[2] Plaintiff has not filed a response to defendants' motion. For this reason, the court will treat those issues raised in defendants' motion that were not addressed or discussed in plaintiff's motion as uncontested. D.Kan. Rule 206(g).

## STANDARD OF REVIEW

In this case, our standard of review is limited to determining whether the contested regulations exceeded the FCIC's statutory authority and whether they are arbitrary and capricious. 5 U.S.C. § 706(2)(A) and (C). The arbitrary and capricious standard is often formulated so as to subsume

---

1. In this regard, the plaintiff maintains it will lose over $400,000 in insurance premium taxes.

2. Neither side has set forth a statement of questions as required in D.Kan. Rule 112(a)(3).

the issue of statutory authority. *See Motor Vehicle Mfrs. Assn. v. State Farm Mut.*, 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415–16, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). This standard of review is a narrow one. *Motor Vehicle Mfrs. Assn.*, 463 U.S. at 43, 103 S.Ct. at 2866. The court examines whether the agency based its decision on consideration of relevant factors, whether there has been clear error of judgment, and whether the agency complied with procedural requirements. *Citizens to Preserve Overton Park*, 401 U.S. at 416, 91 S.Ct. at 823. While the court is to make a "searching and careful" inquiry into the facts, it is not to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park*, 401 U.S. at 416, 91 S.Ct. at 823. Judicial review focuses on the administrative record existing before the agency. *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).

Where the regulations adopted are to preempt state law, the standard of judicial review remains a narrow one:

"If [h]is choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned."

*Fidelity Federal Sav. & Loan Assn. v. de la Cuesta*, 458 U.S. 141, 154, 102 S.Ct. 3014, 3023, 73 L.Ed.2d 664 (1982) (quoting *United States v. Shimer*, 367 U.S. 374, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)) (other citations omitted).

## STATUTORY AUTHORITY

Plaintiff contends the challenged regulations are an exercise of broad federal preemptive powers for which the FCIC lacked the statutory authority. Defendants believe the FCIC was statutorily empowered to adopt these regulations for the FCIA clearly preempts state and local regulation of federal crop insurance contracts. 7 U.S.C. § 1506(k). In defendants' opinion, the challenged regulations simply clarified the FCIC's preemptive powers.

The Supremacy Clause of Article VI of the Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." This provision furnishes Congress with the power to preempt state law. The Supreme Court has identified the recognizable circumstances for when Congress will be said to have exercised that power:

Preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, (citation omitted), when there is outright or actual conflict between federal and state law, (citation omitted), where compliance with both federal and state law is in effect physically impossible, (citation omitted), where there is implicit in federal law a barrier to state regulation, (citation omitted), where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, (citation omitted), or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. (citations omitted).

*Louisiana Public Service Comm'n v. F.C.C.*, 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986). When the field allegedly preempted is one traditionally reserved to the States, " 'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). On the other hand, just because the state has a special concern or a relatively important interest in its own law, e.g. property law, the courts are not to suspend enforcing the

basic principal that federal law prevails in a conflict with state law. *Fidelity Federal Sav. & Loan Assn.*, 458 U.S. at 153, 102 S.Ct. at 3022.

Preemption powers are not confined to Congress, for "a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation." *Louisiana Public Service Comm'n*, 476 U.S. at 369, 106 S.Ct. at 1898–99 (citations omitted). "Federal regulations have no less pre-emptive effect than federal statutes." *Fidelity Federal Sav. & Loan Assn. v. De La Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). The issue of preemption by regulation is generally addressed upon two inquiries: first, did the agency intend to preempt state law, and second, if it did and if that decision is reasonable, then did the agency have the authority to preempt state law. *Integrity Mgt. Intern. v. Tombs & Sons*, 836 F.2d 485, 492 (10th Cir.1987) (citations omitted). Since the FCIC's challenged regulations clearly preempt state and local laws and regulations governing federal crop insurance contracts, the first inquiry is already settled.

The second inquiry is not limited to whether Congress intended for federal regulation to preempt state law. The validity of a preemptive regulation does not depend on express authority from Congress. *City of New York v. F.C.C.*, 486 U.S. 57, 64, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988). "[T]he correct focus is on the federal agency that seeks to displace state law and on the proper bounds of its lawful authority to undertake such action." *Id.* Federal regulations authorized by statute preempt state laws that conflict or that frustrate the purposes of the regulation. *Id.*

Defendants maintain the following language from the FCIA plainly preempts state regulation and taxing of insurance contracts in the federal crop insurance program:

> The Corporation may enter into and carry out contracts or agreements necessary in the conduct of its business, as determined by the Board. State and local laws or rules shall not apply to contracts or agreements of the Corporation or the parties thereto to the extent that such contracts or agreements provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts or agreements.

7 U.S.C. § 1506(k). Defendants construe this provision to foreclose state regulation of not only the direct insurance contracts between the FCIC and recipients, but also the insurance contracts between the reinsured private insurers and the recipients. From the premise that the reinsured company is a party to the FCIC's reinsurance contract, defendant reasons that any state regulation or taxation upon the policy issued by the reinsured company would necessarily be applied to the reinsured company, a party to the FCIC's reinsurance contract. In defendant's view, the inescapable conclusion is that state taxation and regulation would be "inconsistent with the" reinsurance contract for they necessarily interfere with the availability of federal crop insurance.

Plaintiff proposes a much narrower reading of 7 U.S.C. § 1506(k). Plaintiff considers § 1506(k) to be only partial preemption of those state laws which are inconsistent with FCIC's contracts. Plaintiff maintains that state regulation and taxation of the insurance contracts between the private reinsured company and the recipient is permissible because the FCIC is not a party to those contracts.

Because the issue is whether the FCIC has erroneously construed the FCIA's preemption provision, this court must look to another well-established standard of review:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress

has not directly addressed the precise question at issue, the court does simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (footnotes omitted). Other principles of statutory construction relevant here include the cardinal rule of reading the statute as whole and the rule limiting the court's role to interpreting the law, not making it. *Miller v. C.I.R.,* 836 F.2d 1274, 1281 (10th Cir.1988).

In § 1506(k), Congress has unambiguously expressed its intent to confer the FCIC with the authority to preempt all state and local laws which apply to the FCIC's contracts *and* the parties to those contracts. The FCIC's reinsurance agreements is a contract necessary to the FCIC's business.[3] As a party to the reinsurance agreement, the reinsured company cannot be subject to those state laws that the reinsurance agreement provides are not applicable or that are inconsistent with the reinsurance agreement. The plain wording of § 1506(k) reveals that Congress clearly contemplated that the FCIC's reinsurance contracts could provide that inconsistent state or local laws would be inapplicable to the reinsurance contract and to the reinsured company as a party to that contract.[4] The plaintiff does not contest the proposition that state regulation and taxation of crop insurance policies issued by reinsured company are inconsistent with the reinsurance contract. As the FCIC stated in the supplementary information provided with the proposed regulations, state regulation and taxation interferes with the FCIC's ability to deliver fairly, uniformly, and efficiently the benefits offered under the federal crop insurance program through the reinsurance arrangement. In order to give effect to the congressional intent unambiguously expressed in § 1506(k), the court adopts the FCIC's construction.[5]

The FCIC did not exceed its statutory authority in promulgating 7 C.F.R. §§ 400.-351 and 400.352. Congress gave the FCIC the authority to adopt rules and regulations "governing the powers granted to it by law...." 7 U.S.C. § 1506(e). Congress conferred broad powers on the FCIC. "The Corporation shall have such powers as may be necessary or appropriate for the exercise of the powers herein specifically conferred upon the Corporation and all such incidental powers as are customary in corporations generally." Among the powers specifically conferred is the FCIC's right to enter into contracts having provisions that would preempt state and local regulations as to the contracts and the parties thereto. 7 U.S.C. § 1506(k). The challenged regulations merely clarify the FCIC's statutory authority.

Plaintiff's arguments to the contrary are not persuasive. "The 'strong presumption' that the plain language of the statute expresses congressional intent is rebutted only in 'rare and exceptional circumstances.' ..." *Ardestani v. I.N.S.,* —— U.S. ——, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991) (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981)). The legislative

---

**3.** The 1980 amendments to the FCIA authorized and encouraged the FCIC to begin a system of reinsurance for distributing the benefits of federal crop insurance. Section 1507(c) provides in pertinent part: "the Board shall, to the maximum extent possible ... contract with private insurance companies ... to avoid duplication by the Federal Government of services that are or may readily be available in the private sector...."

**4.** In fact, the FCIC has included such language in its standard reinsurance agreement: "[T]he provisions of this agreement inconsistent with provisions of State or local law or regulation will supersede such law or regulation to the extent of the inconsistency."

**5.** Assuming the FCIA was ambiguous or silent as to the FCIC's authority to preempt state laws applicable to the reinsured company and inconsistent with the reinsurance contract, the court would then find that the FCIC's construction of § 1506(k) was "permissible." In this setting, the court would defer to the agency's choice of the alternative constructions of the ambiguous provision. *Colorado State Banking Bd. v. Resolution Trust,* 926 F.2d 931, 936 (10th Cir.1991).

history cited by plaintiff does not rebut this presumption. None of the cited reports indicate Congress was against giving the FCIC the authority to preempt state and local regulation of reinsured companies to the extent the regulation hampered the FCIC's administration of the reinsurance process.

The case law cited by the plaintiff does not support a different reading of § 1506(k). Both *R & R Farm Enterprises v. Federal Crop Ins. Corp.*, 788 F.2d 1148, 1149 (5th Cir.1986), and *Buttonwillow Ginning Co. v. Federal Crop Ins.*, 767 F.2d 612 (9th Cir.1985), involved crop insurance policies issued directly by the FCIC. Consequently, neither case addressed the question of preemption in the reinsurance setting. In *Swanco Ins. Company—Arizona v. Hager*, the Eighth Circuit construed the Product Liability Risk Retention Act, 15 U.S.C. §§ 1501 *et seq.*, as preempting much of the nondomiciliary states' regulation of risk retention groups but as not preempting the nondomiciliary states' regulation of insurers selling to purchasing groups. 879 F.2d 353, 357–58 (8th Cir.1989), *cert. denied*, 493 U.S. 1057, 110 S.Ct. 866, 107 L.Ed.2d 950 (1990).[6] The Eighth Circuit's interpretation, in plaintiff's opinion, is cause for reading the FCIA as preempting only those state laws inconsistent with the FCIC's contracts. The court is not persuaded. The language found in the Product Liability Risk Retention Act does not resemble the FCIA. In particular, the former Act clearly reveals Congress' intent to limit preemption to risk retention groups: "[n]othing in this chapter shall be construed to affect the authority of any State to make use of any of its powers to enforce the laws of such State with respect to which a purchasing group is not exempt under this chapter. 15 U.S.C. § 3903(g). A comparable provision is not to be found in the FCIA. Moreover, all of the cited case law supports giving a plain reading to the unambiguous terms of § 1506(k).

The partial preemption approach advocated by plaintiff—preemption whenever the FCIC is the direct insurer and no preemption whenever the FCIC is the reinsurer—is irrational and contrary to Congress' intent. Congress commanded the FCIC to use to the maximum extent possible the existing private sector insurance delivery system in order to reach all producers and to avoid duplication of services already available. 7 U.S.C. § 1508(h). Congress also directed the FCIC to reimburse the private insurers for costs to the same extent that such costs would be met by the FCIC on its issued policies. 7 U.S.C. § 1508(h). By these terms, Congress clearly contemplated that the reinsurance arrangement would save on operating costs and that the private insurer's operating costs would be no different in kind than if the FCIC had sold the policies directly.[7] In other words, Congress did not intend for the federal crop insurance program to be subject to state premium taxes that reduce the savings anticipated by Congress, that siphon away federal funds from their intended use, and that create an operating cost which would have not existed if the FCIC had issued the policy. The same can be said for the state regulation of reinsurance policy terms. The FCIA reveals that Congress believed the same federal crop insurance benefits would be distributed through the alternative delivery systems. 7 U.S.C. § 1508(h). Nothing in the FCIA shows Congress would tolerate the level of federal crop insurance benefits being dependent upon such factors as who sold the policy or where it was sold. The partial preemption reading offered by plaintiff produces disparate benefits based on irrational factors and frustrates Congress' intent of creating and maintaining an equitable and efficient nationwide system of federal crop insurance.

Plaintiff emphasizes repeatedly that the traditional state regulation of the insurance industry and the substantial state premium taxes will be adversely affected by the FCIC's preemptive regulations. The court fully appreciates these state interests;

---

6. Plaintiff also cites *City Cab Co. v. Edwards*, 745 F.Supp. 757 (D.Me.1990), for the same holding and reasoning.

7. Plaintiff concedes it cannot tax the premiums paid on the policies issued by the FCIC, but it insists that § 1506(k) does not prevent a tax on the premiums paid to the reinsured company.

however, "[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail." *Fidelity Federal Sav. & Loan Assn.*, 458 U.S. at 153, 102 S.Ct. at 3022.

Plaintiff summarily argues the challenged regulations are arbitrary and capricious in that they conflict with the McCarran–Ferguson Act, 15 U.S.C. § 1012; that they radically depart from the FCIC's prior policy; that they were unjustifiably exempted from Executive Orders 12291, 12612 and 12372; and that they were not adopted in compliance with the Regulatory Flexibility Act, 5 U.S.C. §§ 601 *et seq.* These arguments fall far short of showing the FCIC acted arbitrarily and capriciously in issuing these regulations.

The McCarran–Ferguson Act provides that state law regulating the business of insurance supersedes that federal law not "specifically relate[ed] to the business of insurance...." 15 U.S.C. § 1012(b). This reverse preemption principle is inapplicable here for the FCIA unquestionably relates to the business of crop insurance. Consequently, the court cannot perceive any real conflict between the McCarran–Ferguson Act and the challenged regulations.

In the supplementary information provided at 55 Fed.Reg. 23066, the FCIC stated its finding that the proposed regulations did not qualify as a major rule defined in Executive Order 12291. This finding appears reasonable and in compliance with Executive Order 12291. As to Executive Order 12612, the FCIC found the proposed regulations were not subject to those provisions, since the statutory mandate for preemption was clear. Having now construed 7 U.S.C. § 1506(k) to constitute express statutory authority for the preemptive regulations, the court agrees with the FCIC's finding. Finally, the challenged regulations do not involve federal financial assistance or federal development within the scope of Executive Order 12372. The FCIC's compliance with these executive orders is not the basis for separate actionable claims. Moreover, the FCIC did not act arbitrarily and capriciously in regards to those provisions.

■ That the FCIC became intolerant of state regulation of reinsurance policies and state taxation of reinsurance premiums does not mean this action is arbitrary and capricious. " 'Regulatory agencies do not establish rules of conduct to last forever, *American Trucking Assns., Inc. v. Atchison, T. & S.F.R. Co.*, 387 U.S. 397, 416 [87 S.Ct. 1608, 1618, 18 L.Ed.2d 847] (1967), and ... an agency must be given ample latitude to 'adapt their rules and policies to the demands of changing circumstances.' *Permian Basin Area Rate Cases*, 390 U.S. 747, 784 [88 S.Ct. 1344, 1368–69, 20 L.Ed.2d 312] (1968)." *Motor Vehicle Mfrs. Assn. v. State Farm Mut.*, 463 U.S. at 42, 103 S.Ct. at 2866. The FCIC fully explained in the rulemaking process that the increasing costs of premium taxes and more state regulation presented changing circumstances which required the FCIC to clarify its position on preemption. This is a reasoned basis for the FCIC's action.

■ The Regulatory Flexibility Act provides that:

Any regulatory flexibility analysis prepared under sections 603 and 604 of this title and the compliance or noncompliance of the agency with the provisions of this chapter shall not be subject to judicial review. When an action for judicial review of a rule is instituted, any regulatory flexibility analysis for such rule shall constitute part of the whole record of agency action in connection with the review.

5 U.S.C. § 611(b). Plaintiff argues that the FCIC found its actions exempt from the Regulatory Flexibility Act despite the potential impact of its actions. The court is without authority to entertain this argument for plaintiff essentially seeks judicial review of the FCIC's compliance with the Regulatory Flexibility Act.

The administrative record establishes the FCIC's adoption of the challenged regulations was not arbitrary or capricious. The FCIC articulated a satisfactory explanation for the regulations and offered a rational connection between the factual problems caused by state regulation and taxation and its decision then to exercise the

preemptive powers. The FCIC's decision was based on factors that Congress obviously intended the FCIC to consider. The preemptive regulations clarified the FCIC's preemptive powers and established parameters for state regulation and taxation that would facilitate the FCIC's uniform, nationwide delivery of federal crop insurance benefits.

IT IS THEREFORE ORDERED that the defendants' motion for judgment on the pleadings or, in the alternative, for summary judgment (Dk. 13) is granted; that the plaintiff's motion for summary judgment (Dk. 17) is denied; and that the clerk of court shall enter judgment accordingly.

## ON MOTION TO ALTER OR AMEND

The case comes before the court on the plaintiff's motion to alter or amend judgment and for reconsideration. On March 10, 1992, the court filed its order (Dk. 31) granting the defendants' motion for judgment on the pleadings or, in the alternative, for summary judgment (Dk. 13), and denying the plaintiff's motion for summary judgment (Dk. 17). See page 1492. In that order, the court remarked:

> Because the plaintiff is challenging the constitutional validity of FCIC's regulations, the court will take the issues from plaintiff's brief. (Footnote omitted). Plaintiff has not filed a response to defendants' motion. For this reason, the court will treat those issues raised in defendants' motion that were not addressed or discussed in plaintiff's motion as uncontested. D.Kan. Rule 206(g).

(Dk. 31 at 5). In its present motion, the plaintiff asks the court to treat its pleading captioned, "Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment" (Dk. 20), as its written response in opposition to the defendants' motion. Plaintiff then requests the court to alter and amend its judgment accordingly after converting and considering the plaintiff's "reply" brief as the plaintiff's "response."

The court is at a loss to understand the significance of the plaintiff's present motion. The above language quoted from the order plainly indicates that the court essentially viewed the plaintiff's motion and the memorandums filed in support, including the reply brief (Dk. 20), as also the plaintiff's briefs in opposition to defendants' motion. Consequently, the plaintiff's failure to file a pleading captioned a "response" or "memorandum in opposition" was of no consequence as the court did read and consider the specific arguments made in all pleadings before the court. The contested language in the order of March 10, 1992, was intended to alert the plaintiff that despite the inaccurate pleading captions the court was actually treating the plaintiff's motion and pleadings accompanying it as the plaintiff's response and that those arguments in defendants' motion which were not addressed by the plaintiff were being viewed as uncontested.

IT IS THEREFORE ORDERED that the plaintiff's motion to alter or amend judgment and for reconsideration (Dk. 33) is granted to the extent that the court clarifies the statement found at page five of its order of March 10, 1992.