Ronnie Joe BROWN,

v.

CROP HAIL MANAGEMENT, INC., d/b/a Crop Hail Management and Landmark America, Crop Insurance Services, Inc., and Laverne Stratton.

Civ. A. No. G–92–444.

United States District Court, S.D. Texas, Galveston Division.

Feb. 3, 1993.

Richard Guy Baker, Hight Baker & Zbranek, Liberty, TX, for plaintiff.

Todd Alexander Kissner, Tekel Book Matthews & Limmer, Houston, TX, Kurt Henke, Henke Heaton & Bufkin, Clarksdale, MI, for defendants.

## ORDER

KENT, District Judge.

Before the Court is the Plaintiff's Motion to Remand, to which the Defendants have filed an appropriate response. For the reasons set forth below, the Court DENIES the Plaintiff's motion.

*Factual and Procedural History*

In 1990, the Plaintiff purchased a Multi–Peril Crop Insurance policy from Defendants Crop Insurance Services and Laverne Stratton. The policy was issued by Defendant Landmark America ("Landmark") through that company's general agent, Defendant Crop Hail Management, Inc. ("Crop Hail"), under the auspices of a reinsurance contract that Landmark maintained with the Federal Crop Insurance Corporation ("FCIC").[1] By the terms of this contract, the FCIC agreed to reimburse Landmark and Crop Hail for claims covered by the reinsurance contract, so long as Landmark and Crop Hail paid these claims in accordance with applicable FCIC regulations, practices, and procedures.

In the spring of 1990, the Plaintiff planted approximately 200 acres of rice. The crop was lost and the Plaintiff made a demand for coverage under his Multi–Peril Crop Insurance policy for $26,922.38. The Defendants denied the Plaintiff's claim, allegedly on the basis of the FCIC's regulations.

The Plaintiff subsequently filed suit against the Defendants in the 334th Judicial District Court of Chambers County, Texas. The Plaintiff claimed that the Defendants' refusal to honor his demand for coverage constituted a breach of contract, negligence, a breach of the duty of good faith and fair dealing, conspiracy, and a violation of various provisions of the Texas Deceptive Trade Practices–Consumer Protection Act and the Texas Insurance Code.

---

1. The FCIC delivers crop insurance through three vehicles: licensed private insurance agents and brokers sell policies issued by the FCIC (7 U.S.C. § 1507(c)(3) ); the FCIC provides reinsurance to insurers which sell crop insurance policies issued in the insurer's name (7 U.S.C. § 1507(c); § 1508); and county offices of the Agriculture Stabilization and Conservation Service directly provide insurance (7 U.S.C. § 1508(a) ). *Kansas ex rel Todd v. United States,* 791 F.Supp. 1491, 1492 (D.Kan.1992).

Asserting that this case contains a federal question, the Defendants removed the state action to this Court pursuant to 28 U.S.C. § 1441. While the Defendants readily acknowledge that the Plaintiff's complaint, on its face, alleges no federal cause of action, they maintain that a federal question nonetheless exists because federal law preempts all suits against the FCIC or a FCIC reinsured entity.

In response, the Plaintiff filed a Motion to Remand on the ground that this Court lacks jurisdiction over the matter. The Plaintiff properly notes that if federal law arises in a suit only as a defense to the Plaintiff's causes of action, then the case is not within the Court's original or removal jurisdiction. In this case, the Plaintiff contends, federal law arises only as a defense raised by the Defendants.

Thus, the question before the Court is whether this Court has jurisdiction over the Plaintiff's suit. The answer requires a detailed examination of a federal district court's removal jurisdiction.

*Removal Jurisdiction*

A defendant may remove a state court action to federal court only if the action could have been originally filed in federal court. 28 U.S.C. § 1441(a); *Caterpillar v. Williams*, 482 U.S. 386, 391–92, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Wallace v. Ryan–Walsh Stevedoring Co.*, 708 F.Supp. 144, 150 (E.D.Tex.1989). Where, like this case, there is no diversity jurisdiction, a federal question must exist for removal to be proper. *Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429; *Rheams v. Bankston, Wright & Greenhill*, 756 F.Supp. 1004, 1008 (W.D.Tex.1991). Whether a federal question exists depends upon the well-pleaded complaint rule, which provides that the plaintiff's complaint governs the jurisdictional determination. *Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429; *Cedillo v. Valcar Enterprises*, 773 F.Supp. 932, 934 (N.D.Tex.1991). If the complaint, on its face, contains no issue of federal law, then there is no federal question jurisdiction. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983); *Rheams*, 756 F.Supp. at 1008. The fact that a federal defense may be raised to the plaintiff's action will not create federal question jurisdiction. *Franchise Tax Board* 463 U.S. at 12, 103 S.Ct. at 2847; *Powers v. South Central United Food & Commercial Workers Unions*, 719 F.2d 760, 764 (5th Cir.1983). If there is neither diversity jurisdiction nor a federal question, the court must remand the suit to the state court from whence it originated.

*Artful Pleading Doctrine*

There are two exceptions to the well-pleaded complaint rule, however. The first exception is known as the artful pleading doctrine. *See* 14A Wright, Miller & Cooper, Federal Practice and Procedure § 3722 at 266–76. Although a plaintiff is master of his claim and may choose to assert only state law claims, a court will occasionally seek to determine whether the real nature of an action is federal, regardless of the plaintiff's characterization. *See, e.g., In re Carter*, 618 F.2d 1093, 1101 (5th Cir.), *cert. denied*, 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1980). In many contexts, a plaintiff's claim may be one that, because of preemption or otherwise, is exclusively governed by federal law, necessarily making the claim federal. *See, e.g., Brown v. Southwestern Bell Telephone Co.*, 901 F.2d 1250, 1254–55 (5th Cir.1990). Consequently, under the artful pleading doctrine, if a court encounters a suit that has been removed to federal court but has no federal question on its face, the court may seek to determine if the plaintiff had some motive for failing to plead a federal cause of action. *Aaron v. National Union Fire Insurance Co.*, 876 F.2d 1157, 1164–65 (5th Cir.1989), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990). If the court concludes that the plaintiff's failure to plead a federal action was not in good faith, but rather a calculated effort to mask federal preemption, the court will allow removal and keep the case. *See e.g., Federated Department Stores v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981); *Yawn v. Southern Railway*, 591 F.2d 312, 316 (5th Cir.1979), *cert. denied*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 304 (1980).

However, if the court finds that there is a choice between state and federal remedies, and the plaintiff has merely ignored the federal cause of action, then the artful pleading doctrine is inapplicable.

■ In the instant case, although federal law preempts the Plaintiff's action, *see infra,* the Court perceives no deleterious motive on the part of the Plaintiff. Consequently, the artful pleading doctrine plays no role in the Court's resolution of whether this case was properly removed to the Court. *See Beers v. North American Van Lines, Inc.,* 836 F.2d 910, 913 (5th Cir. 1988).

### Complete Preemption Doctrine

■ The second exception to the well-pleaded complaint rule is the complete preemption doctrine. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430. The complete preemption doctrine holds that federal law can so thoroughly preempt a field of state law that the plaintiff's complaint must be characterized as stating a federal cause of action, even if the complaint, on its face, contains only state law causes of action. *See, e.g., Id.; Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 64, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987); *Franchise Tax Board,* 463 U.S. at 23–24, 103 S.Ct. at 2854; *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 675, 94 S.Ct. 772, 781, 39 L.Ed.2d 73 (1974). "In these situations the federal removal court will look beyond the letter of the complaint to the substance of the claim in order to assert jurisdiction." Wright, Miller & Cooper § 3722 at 243. As opposed to the artful pleading doctrine, complete preemption exists even if the plaintiff in good faith chooses not to plead a federal claim. For complete preemption to adhere, the federal law must so completely preempt the field that any suit that sounds in that area necessarily is a federal action. *Wallace,* 708 F.Supp. at 151.

This doctrine was first formulated by the Supreme Court in *Avco Corp. v. Aero*

*Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). In *Avco,* the defendant, a labor union, removed to federal court a suit in which an employer sought an injunction against a labor strike, arguing that the strike violated a collective bargaining agreement between the employer and the union. The Supreme Court upheld the union's removal despite the fact that the employer's suit contained no federal question on its face. The Court concluded that Section 301 of the Labor Management Relations Act ("LMRA") so thoroughly preempts state law as to force the Court to recharacterized the employee's complaint as arising under that section of the act.[2]

For the purposes of this case, whether complete preemption exists depends upon a test formulated by the Fifth Circuit in *Aaron v. National Union Fire Insurance Co.,* 876 F.2d 1157, 1164–65 (5th Cir.1989), *cert. denied sub nom., American Home Insurance Group v. Aaron,* 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990). In *Aaron,* the plaintiffs, the widow and children of a longshoreman killed while working on a vessel in navigable waters, filed suit alleging that intentional and negligent actions on the part of various defendants caused the longshoreman's death. The defendants removed the suit to federal court on the ground that the plaintiffs' action was completely preempted by the Longshore and Harbor Workers' Compensation Act ("LHWCA"). The Fifth Circuit overturned the district court's judgment that this removal was proper, holding that the LHWCA did not completely preempt the plaintiffs' action.

In reaching this decision, the Fifth Circuit conducted a thorough and scholarly review of *Avco* and its progeny. *See Aaron,* 876 F.2d at 1161–66. The court concluded that a federal statute does not completely preempt state law for the purposes of removal jurisdiction unless it meets a three part test. First, the federal statute must provide a civil enforcement provision

---

**2.** The complete preemption doctrine was developed and refined in several cases following *Avco. See, e.g., Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Metropol-*

*itan Life Insurance Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Caterpillar v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

that creates a federal cause of action that both replaces and protects the same interests as the preempted state law cause of action. Second, the federal statute must provide a specific jurisdictional grant to the federal courts to enforce the cause of action created by that federal statute. Finally, there must exist clear congressional intent to make the preempted state claims removable to federal court. *See Rheams,* 756 F.Supp. at 1009 (reciting the three elements of the *Aaron* test in determining whether complete preemption existed).

Using this rubric, the Fifth Circuit concluded that the LHWCA failed each part of this test. While the LHWCA does create an extensive system of remedies, the act contains no civil enforcement provision the creates a federal cause of action to replace a plaintiff's state tort action nor does the act contain a specific jurisdictional grant to the federal courts. *Aaron,* 876 F.2d at 1164–65. Furthermore, the court stated that "the legislative history of the statute is devoid of any indication of the kind of congressional intent found to exist" in other areas where complete preemption adheres. *Id.* at 1165.[3]

### Federal Crop Insurance Act

Having outlined the applicable test, the Court now seeks to discern whether com-

**3.** The Court feels constrained to note that, although *Aaron* is the most recent treatment of the complete preemption question and therefore the law in this Circuit, the Fifth Circuit did formulate a different test for determining whether complete preemption exists in *Texas Employers' Ins. Ass'n v. Jackson,* 820 F.2d 1406 (5th Cir.1987), *vacated,* 862 F.2d 491 (5th Cir. 1988), *cert. denied,* 490 U.S. 1035, 109 S.Ct. 1932, 104 L.Ed.2d 404 (1989). Moreover, like *Aaron,* the court constructed this test within the context of the LHWCA. In *Jackson,* the Fifth Circuit concluded that the thrust of the Supreme Court's opinions in this area indicate that the question of whether complete preemption exists rests solely on Congress' intent. "The Court focuses on the 'explicit direction' from Congress—both in statute and legislative history—that demonstrates its intent utterly to 'displace' state law in establishing federal question jurisdiction." *Jackson,* 820 F.2d at 1419. According to the *Jackson* court, the existence of a civil enforcement section that confers a private cause of action is merely an indicator of Congress intent, not an independent requirement of complete preemption. Using this test, the *Jackson* court easily determined that the LHWCA completely preempted the plaintiff's claims. *Id.* at 1419 n. 15.

The probative worth of *Jackson* is small because the Fifth Circuit en banc vacated this panel opinion and pretermitted the removal jurisdiction question in the opinion subsequently issued. *See Texas Employers' Ins. Ass'n v. Jackson,* 862 F.2d 491 (5th Cir.1988), *cert. denied,* 490 U.S. 1035, 109 S.Ct. 1932, 104 L.Ed.2d 404 (1989). However, this Court feels that the reasoning in *Jackson* merits exploration because of the existence of a another Fifth Circuit opinion that concerns complete preemption and removal jurisdiction, *Trans World Airlines, Inc. v. Mattox,* 897 F.2d 773 (5th Cir.), *cert. denied,* 498 U.S. 926, 111 S.Ct. 307, 112 L.Ed.2d 261 (1990), which was rendered after the decision in *Aaron.*

In *Trans World Airlines,* the defendants removed to federal court a suit brought by the Texas attorney general alleging violations of the Texas Deceptive Trade Practices and Consumer Protection Act. The defendants claimed that Section 1305(a) of the Airline Deregulation Act completely preempted the attorney general's action. The Fifth Circuit upheld the removal, but did so without mentioning *Aaron.* Instead, the *Trans World Airlines* court seemingly followed the *Jackson* test, primarily focusing on congressional intent alone rather than the three part test elucidated in *Aaron. See Mattox,* 897 F.2d at 787–88. Moreover, if the *Aaron* test is applied to the facts of *Trans World Airlines,* complete preemption does not exist. Despite the strong congressional intent to totally preempt the field, the Airline Deregulation Act contains no civil enforcement section that creates an action that allows state attorney generals to sue airlines for deceptive practices. In fact, in this Court's estimation, an application of the *Aaron* test to the facts in *Trans World Airlines* leads to a result similar to that reached by the Supreme Court in *Franchise Tax Bd. v. Construction Laborers Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

In *Franchise Tax Bd.,* the Supreme Court determined that ERISA possesses a civil enforcement section that creates federal causes of action. However, the state law cause of action which the defendant sought to preempt was a levying action brought by California taxing authorities. This type of action has no correlative provision in ERISA's civil enforcement section. Consequently, the Supreme Court concluded that determined that complete preemption did exist as to those plaintiffs' cause of action. 463 U.S. at 22–28, 103 S.Ct. at 2853–56.

Even if the test formulated in *Jackson* had not been subsequently displaced and a legitimate conflict existed as to the proper standard in these type of cases, the Court feels that *Jackson* and *Mattox* have little practical effect on the evaluation of the instant case. Because the elements of the two tests partially overlap, a federal law that meets the *Aaron* test necessarily meets the *Jackson* test. However, the Court can certainly foresee statutes, like the LHWCA, that

plete preemption exists with respect to the federal law in question here. The federal law under consideration is the Federal Crop Insurance Act, 7 U.S.C. §§ 1501 *et seq.* ("FCIA"), which created the FCIC, and the regulations promulgated under the Act's auspices by the United States Department of Agriculture ("USDA"). However, before examining whether the *Aaron* test is met, the Court must determine if the FCIA preempts the Plaintiff's action at all, much less completely. *See Wallace,* 708 F.Supp. at 151 (pre-*Aaron* case declining to resolve whether the LHWCA completely preempted a plaintiff's action because the plaintiff's claims were not even substantively preempted).

 The Plaintiff has asserted several causes of action all of which are grounded in state tort law. In this case, whether the FCIA preempts these claims depends upon whether Congress, in passing the Act, expressed a clear intent to preempt state law. *Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).[4] In resolving this question the Court turns to 7 U.S.C. § 1506(k), which states:

> State and local laws or rules shall not apply to contracts or agreements of the Corporation or the parties thereto to the extent that such contracts or agreements provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts or agreements.

In the Court's estimation section 1506(k) unequivocally demonstrates Congress' intent that the FCIC not be subject to suits grounded in state law unless the FCIC agrees to allow those suits. "The 'strong presumption' that the plain language of the

statute expresses congressional intent is rebutted only in 'rare and exceptional circumstances.'" *Ardestani v. I.N.S.,* — U.S. —, —, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991) (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981) ); *see also R & R Farm Enterprises v. Federal Crop Insurance Corp.,* 788 F.2d 1148, 1149 (5th Cir. 1986); *Buttonwillow Ginning Co. v. Federal Crop Insurance Corp.,* 767 F.2d 612 (9th Cir.1985).

However, the above statute only applies to the FCIC and, in the instant suit, the FCIC is not a party. Rather, the parties consist of individuals and companies that sold or issued a FCIC reinsured policy. Nevertheless, regulations promulgated by the USDA similarly preempt state actions against FCIC reinsured parties. 7 C.F.R. § 400.352 states:

> No state or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the Corporation;

and 7 C.F.R. § 400.351 states:

> These regulations are applicable to all policies of insurance, insured or reinsured by the Corporation.

The purpose of these sections is to "prescribe the procedures for federal preemption of State laws and regulations not consistent with the purpose, intent, or authority of the (FCIA)." 7 C.F.R. § 400.351.

 The fact that these regulations were issued by the USDA does not lessen

---

meet the *Jackson* test but not the *Aaron* test. As to *Mattox,* because the Fifth Circuit did not clearly indicate what test it was using and because the Court's decision in the instant case does not conflict with *Mattox* in anyway, the Court will simply treat the result in that case as an anomaly.

**4.** Preemption can also occur when there is outright or actual conflict between federal and state law, *e.g., Free v. Bland,* 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), where compli-

ance with both federal and state law is in effect physically impossible, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), where there is implicit in federal law a barrier to state regulation, *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the states to supplement federal law, *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

their preemptive effect. Preemption powers are not confined to Congress. *Kansas ex rel Todd v. United States,* 791 F.Supp. 1491, 1495 (D.Kan.1992). "A federal agency acting within the scope of its congressionally delegated authority may preempt state regulation." *Louisiana Public Service Commission. v. Federal Communications Commission.,* 476 U.S. 355, 369, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986) (citations omitted). "Federal regulations have no less preemptive effect than federal statutes." *Fidelity Federal Savings & Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982).

In light of these statutes and regulations, the Court concludes that it is unequivocal that federal law preempts all state law causes of action against either the FCIC or a FCIC reinsured entity. Congress and the USDA have clearly demonstrated that the FCIC and FCIC reinsured entities are immune from suit based on state law. *See also Kansas ex rel Todd,* 791 F.Supp. at 1496 (holding that § 1506(k) unambiguously expresses Congress' intent that the USDA has the authority to preempt all laws which apply to FCIC contracts and the parties to those contracts).

*Civil Enforcement Section*

■ Having determined that the FCIA preempts the Plaintiff's state law claims in substance, the Court next turns to consider whether the FCIA completely preempts this area. Applying the elements of the *Aaron* test, the Court must first determine whether the FCIA has a civil enforcement provision that creates a federal cause of action that both replaces and protects the same interests as the preempted state law causes of action. The Plaintiff's state law causes of action—breach of contact, negligence, breach of the duty of good faith and fair dealing, conspiracy, and violations of various provisions of the Texas Deceptive Trade Practices and Consumer Protection Act and the Texas Insurance Code—all arise from the same event, the Defendants' failure to recognize the Plaintiff's crop insurance claim. The Court notes that 7 U.S.C. § 1508(f) states:

In the event that any claim for indemnity under the provisions of this chapter is denied by the Corporation, an action on such claim may be brought against the Corporation in the United States district court for the district in which the insured farm is located.

Moreover, 7 C.F.R. § 400.176(b) states:

No policy of insurance reinsured by the corporation and no claim, settlement, or adjustment action with respect to any such policy shall provide a basis for a claim of damages against the Company issuing such policy, other than damages to which the Corporation would be liable under federal law if the Corporation had issued the policy of insurance under its direct writing program.

In the Court's estimation, these provisions provide a cause of action that takes the place of the Plaintiff's state law claims and adequately protects the interest at the heart of these claims. If the FCIC or an FCIC reinsured company refuses to pay a person's claim, that person can bring an action for the amount of the claim in federal court.

*Specific Enforcement Section*

■ The Court must next examine whether the FCIA provides a specific jurisdictional grant to the federal courts to enforce the cause of action created by the act. Resolving this question is relatively simple. 7 U.S.C. § 1508(f) specifically indicates that the cause of action that it creates is maintainable in the federal district court of the district in which the farm is located. This jurisdictional grant would also seem to apply to FCIC reinsured companies, in that 7 C.F.R. § 400.176 restricts the type of suits that can be brought against a FCIC reinsured company to the same type that can be brought against the FCIC.

*Congressional Intent*

■ The final determination that the Court must make is whether there exists clear congressional intent to make the Plaintiff's preempted state claims removable to federal court. In making this decision, the Court looks with specificity at the Supreme Court's decision in *Metropolitan*

*Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), and the Fifth Circuit's analysis of this factor in *Aaron*. In *Taylor*, the Supreme Court compared the specific jurisdictional grant contained in § 501 of ERISA with the specific jurisdictional grant in § 301 of the LMRA, which up to that point was the only statute in which complete preemption was found to exist, and noticed that the ERISA provision was "closely parallel" to the LMRA provision. *Taylor*, 481 U.S. at 65, 107 S.Ct. at 1547. Moreover, the Supreme Court also examined the legislative history of ERISA and found explicit language in the Conference Report that § 501 was intended to have identical effect as § 301. *Id.* at 65–66, 107 S.Ct. at 1547 (citing H.R.Conf.Rep. No. 93–1280 p. 327 (1974), U.S.Code Cong. & Admin.News 1974, pp. 4639, 5038, 5107). Therefore, the Supreme Court concluded that § 501 of ERISA completely preempted the plaintiff's claims. In *Aaron*, the Fifth Circuit's similar analysis of the LHWCA revealed that the LHWCA contains no jurisdictional grant similar to § 301 of the LMRA nor any legislative history similar to that found with respect to ERISA. *Aaron*, 876 F.2d at 1165. Consequently, the Fifth Circuit concluded that Congress did not intend for the LHWCA to preempt state law actions as completely as the LMRA and ERISA. *Id.*

This Court's analysis of the FCIA reveals a couple of similarities to the Fifth Circuit's analysis of the LHWCA. The specific jurisdictional grant in the FCIA does not "closely parallel" the specific jurisdictional grant in the LMRA, and the Court was unable to locate any legislative history that indicates that Congress intended the FCIA to have the same effect as the LMRA or ERISA. Nevertheless, the Court concludes that Congress did indeed intend for the FCIA to be among the few areas where the complete preemption doctrine exists. The Court reaches this conclusion because of one crucial difference between the FCIA and the LHWCA. Unlike the LHWCA, § 1508(f) of the FCIA, in no uncertain terms, both creates a cause of action which takes the place of the Plaintiff's state action and contains a specific jurisdictional grant section. The Court acknowledges that § 1508(f) does not "closely parallel" § 301 of the LMRA. But the Court also notes that in *Taylor* the Supreme Court did *not* state that the only way complete preemption could exist was if the statute in question contained a jurisdiction grant that was *identical* to that in the LMRA. *See Taylor*, 481 U.S. at 64–65, 107 S.Ct. at 1547. The Supreme Court merely stated that the inclusion of a jurisdictional grant in ERISA that closely paralleled § 301 of LMRA simplified the question of whether complete preemption existed with respect to ERISA. *Id.* Left unsaid in this analysis is the fact that Congress can draft jurisdictional grants in other ways that reflect its intent that complete preemption exists. The Court concludes that § 1508(f) is such a jurisdictional grant.

If the LHWCA possessed a section like § 1508(f), the Court feels that the *Aaron* court would have found complete preemption to exist, even without finding legislative history similar to that found in *Taylor*.[5] The Court takes particular notice of the *Aaron* court's statement that the remedy creating provisions of the LHWCA and "the admittedly broad scope of the LHWCA (are) not enough under *Avco*, *Franchise Tax*, and *Taylor* to create" a complete preemption exception to the well-pleaded complaint rule. *Aaron*, 876 F.2d at 1166. Consequently, the Court is convinced that Congress, through the plain and unambiguous terms of § 1508(f) and equally explicit language contained in § 1506(k), expressed its intent that the FCIA totally preempts state law actions like the one brought by the Plaintiff in this case.

The Court is fully cognizant of Justice Brennan's admonition in *Taylor*, which the

---

**5.** The *Aaron* court noted that Congress initially passed the LHWCA in 1927, long before the passage of the LMRA. *Aaron*, 876 F.2d at 1165 n. 15. The court indicated that given the age of the statute, it might be inappropriate to demand the same type of legislative history found in *Taylor* with respect to ERISA. *Id.* This Court observes that the first FCIA is nearly as old as the first LHWCA.

Fifth Circuit reiterated in *Aaron,* that federal courts should extend the complete preemption doctrine beyond LMRA and ERISA only reluctantly.[6] *See Taylor,* 481 U.S. at 67–68, 107 S.Ct. at 1548; *Aaron,* 876 F.2d at 1163. Nevertheless, the Court still feels compelled to find that the FCIA completely preempts the Plaintiff's action here. In passing the FCIA, Congress created an extensive and sophisticated program to provide the farmers of this country with some measure of protection from the enormous risk inherent in farming. *See* 7 U.S.C. § 1502. Bearing this in mind forces the Court to conclude two things: first, that Congress meant exactly what it said in § 1508(f), that actions on the denial of a claim under a FCIC insurance policy are to be brought in federal district court; and second, that the specificity of this jurisdictional grant demonstrates Congress' desire to have complete preemption exist in this area.[7]

■ Finally, as frequently reiterated throughout this Order, the above analysis only applies to suits brought directly against the FCIC and, in the instant action, the FCIC is not a party. However, the Court concludes that complete preemption also exists as to suits brought against FCIC reinsured companies. The Court realizes that the *Aaron* test requires a *statutory* creation of a civil enforcement section

and a specific jurisdictional grant and *congressional* intent that complete preemption exist. The Court also understands that the FCIA extends none of these things to FCIC reinsured companies. Nevertheless, it is inconceivable to the Court that, having earlier determined that suits against FCIC reinsured companies are equivalent to suits against the FCIC, it could now conclude that suits against FCIC reinsured companies are not completely preempted in the same fashion as suits against the FCIC. Thus, the Court holds that state law causes of action, like the ones asserted by the Plaintiff in the instant case, against a FCIC reinsured entity are subject to complete preemption.

Therefore, because the Court has determined that complete preemption exists with respect to the Plaintiff's state law causes of action, the Court concludes that the Defendants' removal of this case to this Court was proper. Consequently, the Court DENIES the Plaintiff's Motion to Remand.

Because the Court, in the course of rendering its decision on the Plaintiff's motion, has determined that the FCIA preempts the Plaintiff's state law causes of action, the Court ORDERS the Plaintiff to file, within thirty (30) days of the receipt of this Order, an amended complaint pleading for the relief provided by 7 U.S.C. § 1508(f) and 7 C.F.R. §§ 400.176, 400.351, & 400.-

---

6. Justice Brennan stated,
 "[O]ur decision should not be interpreted as adopting a broad rule that *any* defense premised on congressional intent to pre-empt state law is sufficient to establish removal jurisdiction. The Court holds only that removal jurisdiction exists when, as here, "Congress has *clearly* manifested an intent to make causes of action ... *removable to federal court."* ... In future cases involving other statutes, the prudent course for a federal court that does not find clear congressional intent to create removal jurisdiction will be to remand the case to state court."
 *Taylor,* 481 U.S. at 67–68, 107 S.Ct. at 1548 (emphasis included).

7. In reaching this conclusion, the Court takes *some comfort in the Fifth Circuit's reasoning in the first Jackson opinion. Granted, this decision was vacated, but the Court's exploration of congressional intent in that case remains probative. The Jackson court noted that "the LHWCA, springing originally from the impeccably federal province of admiralty jurisdiction,

has continued, unquestioned through fifty years of congressional monitoring, to remain squarely under the protection of federal jurisdiction." *Jackson,* 820 F.2d at 1420. The court stated that "[a] review of the LHWCA and its legislative history yields ... strong 'explicit direction'" that the LHWCA is so preemptive as to create federal question jurisdiction. *Id.* The *Jackson* court even insisted that the congressional intent to preempt was stronger under the LHWCA than the LMRA. Section 301 of the LMRA merely places the jurisdiction of labor disputes into federal district courts. The LHWCA, however, "contains not only the exclusive remedy section (§ 905(a)), but also sets out sections and chapters that comprehensively regulate employers and insurance carriers that provide LHWCA coverage, and utterly control the sum total of rights and obligations of insurers, employers, and employees." *Id.* The Court feels that a similar total displacement of state law occurs with respect to the FCIA.

352. As a final matter, the Court strongly recommends that both parties refrain from any other procedural maneuvering and concentrate on the substantive resolution of the merits of this case.

IT IS SO ORDERED.