In re Jimmy Ray REES, Vicki Lee Rees, Debtors.

Bankruptcy No. 196–10587–12.

United States Bankruptcy Court,
N.D. Texas,
Abilene Division.

Jan. 13, 1998.

Howard A. Borg, Assistant United States Attorney, Fort Worth, TX, for U.S.

Marc McBeath, Sweetwater, TX, for Debtors.

Walter O'Cheskey, Lubbock, TX, for Chapter 12 Trustee.

## MEMORANDUM OF OPINION ON INSURANCE INDEMNITY

JOHN C. AKARD, Bankruptcy Judge.

The issue before the court is whether the Farm Service Agency has a perfected security interest in Jimmy Ray Rees and Vickie Lee Rees' (Debtors) 1996 cotton crop insurance indemnity payment. The court finds that the FSA has a perfected security interest in the payment.[1]

### Facts

On August 21, 1996, the Debtors filed for relief under Chapter 12 of the Bankruptcy Code in the captioned case. On December 6, 1996, they filed their plan of reorganization. On February 26, 1997, objections to the plan were filed by the Farm Service Agency of the United States Department of Agriculture (FSA), the successor agency to the Farmers Home Administration, and the Rural Housing Service of the United States Department of Agriculture (RHS).[2] The FSA voiced several objections to the Debtors' plan, most of which were resolved. The objection which is not resolved is the one which states "The

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(K).

2. The objections of the RHS are not the subject of this opinion.

Plan fails to recognize or treat the FSA's lien on 1996 crops consisting of crop insurance related to the 1996 cotton crop. To the extent to which the Debtors may have used crop proceeds on which the FSA had a lien to finance the 1996 crop, the FSA claims a partial lien on the 1996 crop proceeds." On February 27, 1997, the FSA filed a supplemental objection on matters not presently in issue.

On April 23, 1997, the Debtors filed a first amended plan of reorganization. On May 15, 1997, FSA and RHS filed an objection to the amended plan. In pertinent part, the objection repeated the allegations concerning the 1996 crop insurance.

At the hearing on this matter, the parties acknowledged that the confirmation of the amended plan depended upon the treatment of the FSA. If the FSA has a lien on the proceeds of the insurance for the Debtors' 1996 cotton crop, the plan cannot be confirmed. If the FSA does not have a lien on those insurance proceeds, then the court can undertake an examination of feasibility and the other matters which must be determined in order to confirm a Chapter 12 plan. The parties agreed that the court could consider the lien issue first.

The parties stipulated to the admission of the following exhibits: The Proof of Claim filed by the FSA along with the exhibits attached to it; 1996 Multiple Peril Crop Insurance Policy No. MP–027315 issued by State Farm Fire and Casualty Company; a Security Agreement executed by the Debtors dated August 11, 1994; and variously dated financing statements. The parties further stipulated to the following facts:

1. The Debtors owe the FSA $50,618.29 in principal plus interest to August 1, 1996 of $3,445.72.

2. The Debtors duly executed the August 11, 1994 security agreement and various other security documents attached to the FSA's proof of claim.

3. The Debtors purchased multiple peril crop insurance for the 1996 year. The insurance was issued pursuant to the Federal Crop Insurance Act.

4. The FSA did not advance any funds for the Debtors' 1996 cotton crop.

5. The FSA did not obtain a written assignment of the crop insurance proceeds.

6. The Debtors received $30,155.00 net of the insurance premium, as proceeds of the insurance policy for the loss of their 1996 cotton crop.

7. The 1996 cotton crop was grown on land covered by the FSA's security agreements.

The Debtors concede that under the August 11, 1994 security agreement and other security documents, the FSA has a lien on the proceeds of multiple peril crop insurance and that such liens are properly perfected under state law. However, they assert that because federal regulations require assignment of crop insurance proceeds to be filed with the appropriate federal agency, such procedure preempts state law and prevents the FSA from perfecting a lien on the crop proceeds under state law.[3] The FSA asserts that the assignment procedure is a method of having the proceeds paid directly to the creditor, but once the proceeds are received by the Debtors, they become subject to the FSA's liens under state law. The court heard no evidence as to the disposition of the proceeds by the Debtors, so the court must assume that the Debtors retain the proceeds.

The Multiple Peril Crop Insurance contract issued to the Debtors by State Farm Fire and Casualty Company contains the following statement: "This policy is reinsured by the Federal Crop Insurance Corporation (FCIC) under the provision of the Federal

---

3. Paragraph 26 of the policy in question describes the assignment procedure. The Debtors do not cite, nor has the court been able to locate, any provisions of the Code of Federal Regulations describing the assignment procedure. The court in *Buttonwillow Ginning Company v. FCIC*, 767 F.2d 612 (9th Cir.1985) in discussing the assignment of indemnities under a crop insurance policy, referred to 7 C.F.R. § 1402.7, paragraph 8. Apparently, that section has been repealed because in the current Code of Federal Regulations, part 402 is entitled "Catastrophic Risk Protection Endorsement" and contains only §§ 402.1 through 402.4. The source is given as 62 F.R. 2002, Jan. 6, 1995.

Crop Insurance Act, as amended (7 U.S.C. § 1501 *et seq.*). All provisions of the policy and rights and responsibilities of the parties are specifically subject to the Federal Crop Insurance Act."

The purpose of the FCIC is "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance...." 7 U.S.C. § 1502.[4] Through a system of reinsurance, the FCIC protects farmers from suffering losses due to crop damage. Under the general supervision of the Secretary of Agriculture (Secretary), the FCIC is managed by a board of directors and a manager. 7 U.S.C. § 1505. The general powers of the FCIC include:

> The [FCIC] may enter into and carry out contracts or agreements, and issue regulations, necessary in the conduct of its business, as determined by the Board. State and local laws or rules shall not apply to contracts, agreements, or regulations of the [FCIC] or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations.

7 U.S.C. § 1506(*l*) (Supp.1997).

With respect to the indemnities payable under the Federal Crop Insurance Act (FCIA), it provides:

> Claims for indemnities under this chapter shall not be liable to attachment, levy, garnishment, or any other legal process **before payment to the insured** or to deduction on account of the indebtedness of the insured or the estate of the insured to the United States except claims of the United States or the [FCIC] arising under this chapter.

7 U.S.C. § 1509 (Supp.1997). (emphasis added).

Regulations concerning the FCIC are contained in Chapter IV, Part 400, of the Code of Federal Regulations. In response to a

number of problems, the FCIC added a subpart P entitled "Preemption of State Laws and Regulations" to Part 400 of its General Administrative Regulations effective June 6, 1990. *See* 55 Fed.Reg. 23,066 (June 6, 1990). One of the problems which the regulations were intended to cure was:

> A number of instances have been reported where indemnities have not reached the intended recipient because of garnishments, liens, attachments, etc., served upon the reinsured companies under the various State laws. The clear statutory intent was that these assistance benefits be exempt from such interference. (*See* 7 U.S.C. § 1509).

55 Fed.Reg. 23,066 (1990). The source of authority for these regulations is stated to be 7 U.S.C. §§ 1506, 1516. The pertinent parts of those regulations read as follows:

**§ 400.352. State and local laws and regulations preempted.**

> (a) No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the [FCIC].
>
> (b) The following is a non-inclusive list of examples of actions that State or local governmental entities or non-governmental entities are specifically prohibited from taking against the [FCIC] or any party that is acting pursuant to this part. Such entities may not:
>
> (1) Impose or enforce liens, garnishments, or other similar actions against proceeds obtained, or payments issued in accordance with the Federal Crop Insurance Act, these regulations, or contracts or agreements entered into pursuant to these regulations.
>
> . . . .

Other portions of the regulations relate to creditors.

---

4. *Owen v. Crop Hail Management,* 841 F.Supp. 297 (W.D.Mo.1994) at pp. 300–302 contains a history of the Federal Crop Insurance Act.

## PART 401–GENERAL CROP INSURANCE REGULATIONS–REGULATIONS FOR THE 1988 AND SUBSEQUENT CONTRACT YEARS.

### § 401.5. Creditors.

An interest of a person in an uninsured crop existing by virtue of a lien, mortgage, garnishment, levy, execution, bankruptcy, involuntary transfer or other similar interest shall not entitle the holder of the interest to any benefit under the contract.

## PART 457–COMMON CROP INSURANCE REGULATIONS; REGULATIONS FOR 1994 AND SUBSEQUENT CONTRACT YEARS.

### § 457.5. Creditors.

An interest of a person in an uninsured crop existing by virtue of a lien, mortgage, garnishment, levy, execution, bankruptcy, involuntary transfer or other similar interest shall not entitle the holder of the interest to any benefit under the contract.

Two provisions of the policy issued to the Debtors in this case (which is a standard policy prescribed by the FCIC)[5] are applicable to the issues under consideration.

### 26. ASSIGNMENT OF INDEMNITY

You may assign to another party your right to an indemnity for the crop year. The assignment must be on our form and will not be effective until approved in writing by us. The assignee will have the right to submit all loss notices and forms as required by the policy.

### 28. APPLICABILITY OF STATE AND LOCAL STATUTES

If the provisions of this policy conflict with statutes of the State in which this policy is issued, the policy provisions will prevail. State and local laws and regulations in conflict with federal statutes, this contract, and the applicable regulations do not apply to this policy.

**5.** The Debtors' "multiple peril crop insurance policy" is similar to the "common crop insurance policy" which follows 7 C.F.R. § 457.8.

### Discussion

■■■ A reading of the above quoted regulations could lead one to the conclusion that the only way to obtain a lien on the proceeds of a crop insurance policy is by an assignment secured in the manner described in the policy. This is particularly true in reading the first example under § 400.352(b) which prohibits the imposition or enforcement of liens on the "proceeds obtained" or the "payments issued" under the policy. However, such a reading would clearly conflict with the language of the statute which prohibits liens on policy proceeds "before payment to the insured." 7 U.S.C. § 1509. The United States Supreme Court directed that clear Congressional intent be followed when it said:

When a court reviews an agency's construction of the statute which it administers, [the court] is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). Since Congress clearly mandated that these protections apply only "before payment to the insured" this court, and the FCIC cannot place restrictions on those funds **after** payment to the insured. There is no evidence that the FCIC intended that its regulations exceed the mandate of 7 U.S.C. § 1509, nor does the court interpret the FCIC's regulations to exceed that mandate.

■■■ The Debtors assert that the FSA could have a security interest in the insurance payments only by assignment in the manner described in the policy because the policy was issued pursuant to the FCIA and the FCIA completely preempts state law, including the Texas version of the Uniform Commercial Code, TEXAS BUS. & COM. CODE

Paragraphs 26 and 28 of the Debtors' policy are identical to paragraphs 26 and 28 of the common policy.

ANN. (Vernon 1997). In support of their position, the Debtors cite *Owen v. Crop Hail Management,* 841 F.Supp. 297 (W.D.Mo. 1994). This court finds the Debtors' reading of *Owen* too broad. In *Owen,* the farmer secured a crop insurance policy from Crop Hail Management. The FCIC reinsured the policy pursuant to the FCIA. A dispute arose concerning policy coverage and the farmer sued Crop Hail Management in state court. The matter was removed to federal court. The federal district court held that when the farmer sued the insurer, the farmer also sued the reinsurer, FCIC, and that pursuant to the FCIA the FCIC may be sued only in federal court. *Id.* at 297 (citing *State ex rel. Todd v. United States,* 995 F.2d 1505– 1510 (10th Cir.1993)) ("Even if Congress did not expressly provide for preemption of state law in private insurance contracts which are reinsured by the FCIC, the FCIC's decision to preempt state law in the reinsurance situation was eminently reasonable."). In so holding, however, the *Owen* court stated:

> While, unlike the Brown court, this court does not decide whether federal courts have exclusive jurisdiction to hear all claims under the [FCIA], the court agrees that the [FCIA] does specify the jurisdiction, venue and damages for most cases. This is sufficient to meet the last prong of the complete preemption test.

*Id.* at 304. This court distinguishes both *Owen* and *Brown v. Crop Hail Management, Inc.,* 813 F.Supp. 519 (S.D.Tex.1993) mentioned in the quote from *Owen* above, from the case at bar. In both *Owen* and *Brown,* the insureds filed state actions against the insuring company. In the instant case, the FSA is attempting to follow state court procedures to enforce its lien on proceeds which are already in the hands of the insured. There is no mention in either case of the FCIA preempting creditors' lien rights as set forth in the Uniform Commercial Code.

It is evident from a reading of *Owen* and *Brown* that "complete" preemption means something less than complete. It is complete as it preempts states from interfering with the FCIA's regulation of insurance to farmers and complete as to the federal jurisdiction and venue of suits brought against the FCIC and the companies it reinsures, but that is the extent of it. *See also R & R Farm Enters., Inc. v. FCIC,* 788 F.2d 1148, 1150 (5th Cir.1986) (stating that to the extent that [state] laws are inconsistent with [the contract], they are not applicable).

In *Holman v. Laulo–Rowe Agency,* 994 F.2d 666 (9th Cir.1993), the Ninth Circuit Court of Appeals stated that while the wording of 7 U.S.C. § 1506(d) placed exclusive jurisdiction in federal courts to resolve suits by or against the FCIC, it did not require suits against insurance agents for their own errors to be brought in federal court. *Id.* at 669. Thus, the Ninth Circuit concluded that while some areas of state law are preempted by the FCIA, where there is no conflict, state law is still enforceable.

Although an assignment of indemnity is possible under the contract, that provision does not preclude a creditor from enforcing its state law lien rights against the proceeds in the hands of an insured Debtor. *See Meyer v. Nat'l Farmers Union Prop. & Cas. Co.,* 957 F.Supp. 1492 (D.Wyo.1997) (stating that the court must conclude that Congress has not so comprehensively occupied the entire field of crop insurance law that it has left no room for state law).

The court finds that *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) is still good law. In *Butner,* the Supreme Court stated:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a "windfall merely by reason of the happenstance of bankruptcy."

*Id.* at 55, 99 S.Ct. at 918 (citing *Lewis v. Manufacturers Nat'l Bank,* 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961)).

### Conclusion

 For the reasons stated above, the court finds that the FSA can enforce its lien against the crop insurance proceeds in the hands of the insured Debtors. Confirmation of the amended plan of reorganization proposed by the Debtors will be denied, without prejudice to the filing of another plan.

ORDER ACCORDINGLY.[6]

---

**6.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED. R.BANKR.P. 7052. This Memorandum will be published.