## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## No. 98-10039
_____

In the Matter of:  DAVID WAYNE COOK;
In the Matter of:  ANGELYN STACY COOK,

Debtors,

ROLLING PLAINS PRODUCTION
CREDIT ASSOCIATION,

Appellant/Cross-Appellee,

versus

DAVID WAYNE COOK; ANGELYN STACY COOK,

Appellees/Cross-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Texas

_____

March 9, 1999

Before GARWOOD, BARKSDALE, and STEWART, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

The district court having affirmed the bankruptcy court's rejection of the objections by Rolling Plains Production Credit Association (PCA) to the discharge of David W. and Angelyn S. Cook, and the dischargeability of their debt to PCA, primarily at issue is whether, for federal crop insurance proceeds, Texas secured transaction law is preempted by federal law.  We **AFFIRM in Part; REVERSE in Part; VACATE in Part;** and **REMAND**.

The Cooks' indebtedness to PCA under promissory notes, which matured in March 1996, was secured through a security agreement. Among other things, the agreement covered crops. As a result, it provided that the Cooks granted to PCA a

> security interest not only to that described above but also to all crops planted or grown on the hereinafter described land *and the products thereof and proceeds thereof*, and to all crops planted or grown upon the hereinafter described land within five years from the date hereof....

(Emphasis added.) And, the agreement required the Cooks to

> insure the collateral with companies acceptable to [PCA] against such casualties and in such amounts as [PCA] shall require with a standard mortgage clause in favor of [PCA], and [PCA] is hereby authorized to collect such sums which may become due under any of said policies and apply same to the obligations hereby secured.

Thereafter, PCA perfected its security interest.

For their 1995 cotton crop, the Cooks purchased crop insurance from PCA's in-house agency, which was reinsured pursuant to the Federal Crop Insurance Act (FCIA). Concerning the preemption issue at hand, the insurance policy stated:

> You may assign to another party your right to an indemnity for the crop year. *The assignment must be on our form and will not be effective until approved in writing by us.* The assignee will have the right to submit all loss notices and forms as required by the policy.

(Emphasis added.) PCA did not, however, take such an assignment of the insurance proceeds. This was because, as two PCA employees testified at trial, PCA did not take an assignment unless either it questioned the character of the debtor or the loan was in trouble.

In March 1996, the Cooks received crop insurance proceeds of approximately $55,000 for 1995 cotton crop losses. But, instead of using those proceeds to reduce the PCA debt, David Cook satisfied loans to another creditor, secured by two vehicles which were exempt property; paid annual land lease payments (including $10,000 to his father-in-law); and used the balance for expenses. (In that this opinion turns on the preemption issue, it is not necessary to present other facts relevant to the discharge and dischargeability issues, such as claimed representations by David Cook, including upon his receiving the check for the crop insurance proceeds, regarding payment of those proceeds to PCA, or his sale of equipment that was PCA's collateral, including sales to his father-in-law. Of course, those matters will be at issue on remand.)

In mid-1996, the Cooks filed a Chapter 7 bankruptcy petition. Later that year, PCA filed an adversary proceeding in bankruptcy court, objecting to discharge under 11 U.S.C. § 727, and to dischargeability of the Cooks' debt, pursuant to 11 U.S.C. § 523. Following a trial in early 1997, the bankruptcy court held that PCA did not have a lien on the crop insurance proceeds, and denied its objections to discharge and dischargeability. Late that year, the district court affirmed.

PCA contends that the bankruptcy court erred by concluding that PCA did not have a valid lien on the crop insurance proceeds because it did not obtain an assignment in accordance with federal law and regulations; by finding that the Cooks were not on notice of the security interest claimed by PCA in those proceeds; and by refusing to deny discharge under 11 U.S.C. § 727(a)(2)(A) (court shall grant debtor discharge unless "debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate ... has transferred, removed, destroyed, mutilated, or concealed ... property of the debtor, within one year before the date of the filing of the petition"), or under § 727(a)(5) (court shall grant debtor discharge unless "debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities"), or dischargeability of the PCA debt under 11 U.S.C. § 523(a)(6) (discharge under 11 U.S.C. § 727 does not discharge debtor from debt "for willful and malicious injury by the debtor to another entity or to the property of another entity").

Alternatively, PCA claims an equitable lien in the Cooks' exempt vehicles (they cleared the title to those vehicles by using the crop insurance proceeds to satisfy the loans secured by the vehicles).

- 4 -

On cross-appeal, the Cooks contend that the district court erred by holding that they failed in bankruptcy court to preserve the preemption issue.

Because it implicates our standard of review, we consider *de novo* the district court's ruling that the preemption issue had not been preserved. *See, e.g.*, **Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)**, 163 F.3d 925, 928 (5th Cir. 1999). And, "[a]lthough this case has already been reviewed on appeal by the district court, we review the bankruptcy court's findings as if this were an appeal from a trial in the district court". **Phoenix Exploration, Inc. v. Yaquinto (Matter of Murexco Petroleum, Inc.)**, 15 F.3d 60, 62 (5th Cir. 1994). It goes without saying that we review the bankruptcy court's findings of fact for clear error; its conclusions of law, *de novo*. *E.g.*, **Border v. McDaniel (Matter of McDaniel)**, 70 F.3d 841, 842-43 (5th Cir. 1995).

A.

The bankruptcy court held that crop insurance proceeds are contract rights; and that PCA's security interest in "proceeds" of crops did not constitute a lien on federal crop insurance proceeds. The court reasoned that PCA could obtain the lien only through an assignment under the FCIA and regulations. PCA asserts that the bankruptcy court erred by holding that, under state law, its lien was invalid. It also maintains that the district court held correctly that the preemption issue was not preserved;

- 5 -

alternatively, it maintains that, to the extent the bankruptcy court relied on preemption, it erred. As stated, the Cooks cross-appeal the district court's ruling that preemption was not preserved.

1.

The bankruptcy court ruled from the bench that PCA could obtain the lien only through an assignment under the FCIA and regulations. Interpreting this as a holding that, in this instance, state secured transaction law was preempted by federal law, PCA moved for a new trial, contending that Texas law was not preempted. In denying the motion, the bankruptcy court stated that its decision was not based on preemption; nevertheless, in that same order, it repeated its conclusion that, for the lien, PCA was required to obtain an assignment conforming to the federal regulations. In the light of its holding that the preemption issue had not been preserved in bankruptcy court, the district court did not address it.

At the very least, the factual basis for the preemption claim was raised in the pretrial order: that the crop insurance policy was subject to the FCIA and to the FCIC regulations; and that PCA did not obtain an assignment on the form specified in the insurance policy, pursuant to those regulations. And, after the Cooks raised the issue in their post-evidence argument to the bankruptcy court, the parties argued the issue fully to the court at that time. The

issue was addressed again in PCA's new trial motion and the Cooks' response.

Moreover, as noted, although the bankruptcy court, in denying a new trial, stated that it did not rely on preemption in concluding that PCA's lien was invalid, it nevertheless repeated its bench ruling that the FCIA regulations constitute the exclusive method for obtaining a security interest in federal crop insurance proceeds. It thus concluded that compliance with state secured transaction law was insufficient to perfect a security interest in the proceeds. True, the bankruptcy court did not use the word "preemption"; but, its conclusion is tantamount to holding that, for federal crop insurance proceeds, state law governing the perfection of a security interest is preempted by federal regulations.

In the light of the foregoing, we conclude that the district court erred by holding that the preemption issue had not been raised in bankruptcy court. *See* ***Butler Aviation Int'l, Inc. v. Whyte (Matter of Fairchild Aircraft Corp.)***, 6 F.3d 1119, 1128 (5th Cir. 1993) (to be preserved, "argument must be raised to such a degree that the trial court may rule on it").

2.

Pursuant to the FCIA, the Federal Crop Insurance Corporation (FCIC) was established "to promote the national welfare by improving the economic stability of agriculture through a sound

- 7 -

system of crop insurance". 7 U.S.C. § 1502. Along this line, the FCIA provides that "[s]tate and local laws or rules shall not apply to contracts, agreements, or regulations of the [FCIC] or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations". 7 U.S.C. § 1506(*l*). Concerning the lien at issue, the FCIA provides:

> Claims for indemnities under this chapter shall not be liable to attachment, levy, garnishment, or any other legal process *before payment to the insured* or to deduction on account of the indebtedness of the insured or the estate of the insured to the United States except claims of the United States or the [FCIC] arising under this chapter.

7 U.S.C. § 1509 (emphasis added).

With respect to creditors, the FCIA regulations state that an interest in an insured crop existing by virtue of a lien "shall not entitle the holder of the interest to any benefit *under the contract*". 7 C.F.R. § 401.5 (emphasis added). Along this line, they provide that a debtor may assign the right to indemnity; but, that assignment "must be on [FCIC's] form and will not be effective until approved in writing by [FCIC]". 7 C.F.R. § 401.8. As noted, the Cooks' insurance policy contained such a provision.

Regarding preemption, the regulations state:

> The regulations contained in this subpart are issued pursuant to the [FCIA] ... to prescribe the procedures for Federal preemption of State

laws and regulations not consistent with the purpose, intent, or authority of the [FCIA]. These regulations are applicable to all policies of insurance, insured or reinsured by the [FCIC], contracts, agreements, or actions authorized by the [FCIA] and entered into or issued by FCIC.

7 C.F.R. § 400.351.

> (a) No state or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the [FCIC].
>
> (b) The following is a non-inclusive list of examples of actions that State or local governmental entities or non-governmental entities are specifically prohibited from taking against the [FCIC] or any party that is acting pursuant to this part. Such entities may not:
>
>> (1) Impose or enforce liens, garnishments or other similar actions against proceeds obtained or payments issued in accordance with the [FCIA], these regulations or contracts or agreements entered into pursuant to these regulations....

7 C.F.R. § 400.352.

For the proceeds in issue, PCA agrees that these provisions preempt state law for claims made against the FCIC or its reinsured agents, but asserts that they do *not* preempt state law governing issues arising between PCA and the Cooks, *after* they received the proceeds. The Cooks counter that the proceeds are not even subject

- 9 -

to a lien post-receipt, maintaining that the regulations provide the exclusive means for a security interest in the proceeds.

"The pre-emption doctrine, which is derived from the Supremacy Clause, U.S. Const., Art. VI, cl.2, requires us to examine congressional intent." *Rural Utilities Serv. v. Cajun Elec. Power Cooperative, Inc. (Matter of Cajun Elec. Power Cooperative, Inc.)*, 109 F.3d 248, 253 (5th Cir. 1997).

> Pre-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. Without explicit pre-emptive language in the relevant statute, congressional intent to displace state law may be inferred because ... the scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, because the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or because the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose.
>
> Even where Congress has not totally supplanted a state law, the state law is voided to the extent that it directly conflicts with federal law. This type of conflict arises when compliance with both federal and state regulations is a physical impossibility; or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Id*. at 253-54 (internal quotation marks and citations omitted).

Of course, federal regulations have the same preemptive effect as federal statutes. *Id*. at 254. In reviewing regulations which preempt state law, we must determine whether the agency's "choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute". *Id*. As discussed, toward this end, we review *de novo* the bankruptcy court's preemption ruling. *See **Branson v. Greyhound Lines, Inc.***, 126 F.3d 747, 750 (5th Cir. 1997), *cert. denied*, ___ U.S. ___, 118 S. Ct. 1362 (1998).

For crop insurance proceeds that have been paid to the debtor, neither the statute nor the regulations express an intent to preempt state secured transaction law governing issues arising between a debtor and a creditor. Instead, the statute provides that claims for indemnity are not subject to attachment or other legal process "*before* payment to the insured". 7 U.S.C. § 1509 (emphasis added). Of course, in this regard, the regulations preempt state law only to the extent that they are "not consistent with the purpose, intent, or authority" of the FCIA. 7 C.F.R. § 400.351. And, the prohibition against the enforcement of liens against such proceeds applies only to actions taken "against the [FCIC] or any party that is acting pursuant to this part". 7 C.F.R. § 400.352(b).

Had Congress intended to preempt state law governing a lender's enforcement of a lien against a debtor *after* the debtor's

receipt of the proceeds, it would have provided for anti-attachment "before *or after* payment to the insured".  It did not.  Again, the FCIA provides only that the lien shall not attach "*before* payment to the insured".  7 U.S.C. § 1509 (emphasis added).

Therefore, we conclude that state law is preempted only when a creditor seeks to obtain the proceeds directly from the FCIC or one of its agents.  When the creditor does so, an assignment in accordance with 7 C.F.R. § 401.8 is necessary.  But, after the proceeds are paid to the debtor, state law applies.

Recently, in a case involving very similar facts, the bankruptcy judge who presided earlier over the case at hand reached the same conclusion as do we with respect to preemption.  **In re Rees**, 216 B.R. 551 (Bankr. N.D. Tex. 1998), concerned whether the Farm Service Agency had a perfected security interest in the debtors' crop insurance proceeds.  There, as here, the creditor had not obtained an assignment of the proceeds in accordance with the federal regulations.  **Id**. at 552.

The debtor in **Rees** (represented by the same counsel as for the Cooks) contended, as do the Cooks, that, "because federal regulations require assignment of crop insurance proceeds to be filed with the appropriate federal agency, such procedure preempts state law and prevents the [creditor] from perfecting a lien on the crop proceeds under state law".  **Id**. at 552.  And, the creditor in that case, like PCA here, countered that "the assignment procedure

is a method of having the proceeds paid directly to the creditor, but once the proceeds are received by the Debtors, they become subject to the [creditor's] liens under state law". *Id*.

In *Rees*, the bankruptcy court held that the FCIA and regulations did not prohibit the creditor from enforcing its lien under state law against federal crop insurance proceeds in the hands of the debtor:

> A reading of the above quoted regulations could lead one to the conclusion that the only way to obtain a lien on the proceeds of a crop insurance policy is by an assignment secured in the manner described in the policy. This is particularly true in reading the first example under § 400.352(b) which prohibits the imposition or enforcement of liens on the "proceeds obtained" or the "payments issued" under the policy. However, such a reading would clearly conflict with the language of the statute which prohibits liens on policy proceeds "before payment to the insured." 7 U.S.C. § 1509....

*Id*. at 554. Accordingly, the court concluded that, despite the creditor's failure to obtain an assignment in accordance with the federal regulations, the creditor could "enforce its lien against the crop insurance proceeds *in the hands of* the insured Debtors". *Id*. at 556 (emphasis added).

The bankruptcy court's reasoning in *Rees* is sound; its conclusion, correct. Therefore, that same court erred earlier in holding that, for the case at hand, PCA could perfect its lien only by obtaining an assignment in accordance with the FCIA regulations.

The bankruptcy court's ruling on the validity of PCA's lien under Texas law is somewhat confusing.  In ruling from the bench, it stated that the lien was invalid under Texas law because insurance proceeds are contract rights, and the security agreement did not specify that the collateral included crop insurance proceeds.  In its order denying PCA's new trial motion, it repeated that conclusion.  But, it then stated that, even assuming *arguendo* that, under Texas law, PCA had an enforceable lien on the proceeds, it still could not prevail because "[t]here was no mention of the crop insurance proceeds in the security agreement" and "[t]hus there was no notice to the Cooks in the documents prepared by the PCA that the PCA was claiming a security interest in the crop insurance proceeds".  In short, it is unclear whether the court held the lien invalid because the security agreement did not mention crop insurance proceeds, or whether that omission precluded PCA's recovery irrespective of the lien's validity.

In any event, the bankruptcy court erred.  The Cooks apparently concede as much; they do not challenge or otherwise respond to PCA's contentions regarding the lien's validity under Texas law.  Indeed, Texas law expressly provides that insurance proceeds payable as the result of loss or damage to collateral constitute "proceeds" of that collateral:

> "Proceeds" includes whatever is received
> upon the sale, exchange, collection or other

> disposition of collateral or proceeds. *Insurance payable by reason of loss or damage to the collateral is proceeds*, except to the extent that it is payable to a person other than a party to the security agreement....

TEX. BUS. & COM. CODE ANN. § 9.306(a) (Vernon Supp. 1999) (emphasis added). Moreover, the Texas Supreme Court has held that, under Texas law, payments to producers under federal farming programs are proceeds of collateral. *See **Sweetwater Production Credit Ass'n v. O'Briant***, 764 S.W.2d 230 (Tex. 1988) (producer's interest in crops credited to producer to refrain from planting under PIK Diversion Program created pursuant to 7 U.S.C. § 1421 constituted "proceeds" under § 9.306(a)).

Accordingly, under Texas law, the term "proceeds", which was included in the security agreement, encompasses insurance proceeds. Therefore, the Cooks were on notice that PCA was claiming a security interest in their crop insurance proceeds.

### B.

PCA contends that the bankruptcy court erred by failing to deny discharge under 11 U.S.C. § 727(a)(2)(A) and (a)(5), or dischargeability of the debt pursuant to 11 U.S.C. § 523(a)(6). It held that, because PCA did not have a lien on the proceeds, it could not complain about the Cooks' use of them. In denying a new trial, the court reiterated that, because PCA did not have the lien, the Cooks were free to spend the proceeds as they chose; and

- 15 -

that, by using them to pay other creditors, the Cooks did not act with intent to hinder, delay, or defraud PCA.

Preliminarily, the bankruptcy court held that there was no evidence that Mrs. Cook participated in the activities about which PCA complains.  PCA has not challenged this ruling.  Accordingly, PCA has abandoned its objections to Mrs. Cook's discharge.  *E.g.,* FED. R. APP. P. 28(a)(9); ***Huckabay v. Moore***, 142 F.3d 233, 238 n.2 (5th Cir. 1998).

But, as for Mr. Cook, we conclude that the bankruptcy court's discharge and dischargeability decisions were influenced by its erroneous conclusions regarding PCA's lien.  Accordingly, those issues must be reconsidered on remand.

### III.

For the foregoing reasons, that portion of the district court's judgment affirming the bankruptcy court's discharge of Mrs. Cook is **AFFIRMED**; that portion affirming the bankruptcy court's conclusion that PCA did not have a valid lien on the crop insurance proceeds is **REVERSED**; that portion affirming the bankruptcy court's decisions on discharge and dischargeability is **VACATED**; and this case is **REMANDED** for further proceedings consistent with this opinion.

*AFFIRMED in PART; REVERSED in PART;*
*VACATED in PART; and REMANDED*